# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|
IMAPIZZA, LLC,                                      |
229 1/2 Pennsylvania Ave. SE, 3rd Floor,           |
Washington, D.C. 2003,                             |
,                                                  |
     *Plaintiff*,         |
           Civil Action No. 17-cv-02327-TJK
       v.         |
|
AT PIZZA LIMITED, Charlotte Lane                   |
Edinburgh, U.K., EH2 4QZm,                         |
BHASKER DHIR, c/o 2 Clifton Moor Business          |
Village, James Nicholson Link, York U.K.,          |
Y030 4XG, and                                      |
RUPERT LYLE, c/o Charlotte Lane                    |
Edinburgh, U.K., EH2 4QZ,                          |
|
     *Defendants*.        |
_____ |


## DEFENDANTS' MOTION AND MEMORANDUM TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1), 12(b)(6) AND 12(b)(2)

Pursuant to Rule 12(b)(2), 12(b)(6), and 12(b)(1) of the Federal Rules of Civil Procedure, Defendants At Pizza Limited, Bhasker Dhir, and Rupert Lyle ("Defendants") respectfully move this Court to dismiss this action for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim.

## I.     **INTRODUCTION**

The only connection this dispute has to the U.S. is Plaintiff.  Defendants reside and are located in the United Kingdom ("UK") and Defendant At Pizza Limited operates one restaurant under the name "@pizza" in Edinburgh, Scotland.  Plaintiff believes it can bring UK claims and enforce its U.S. trademark registrations for "&pizza" and "&" here to stop Defendants' overseas conduct.  However, the jurisdiction of the U.S. courts, copyright, and trademark laws cannot be extended to the infringing conduct alleged here.  Notwithstanding Defendants are foreign, Defendants have had no minimum or specific contacts with the forum such that they could have anticipated being haled into court here.  Two Defendants are individual UK citizens and residents who have acted as officers of Defendant At Pizza Limited at all times.  Defendant Rupert Lyle last visited Washington D.C. in 2015 before At Pizza Limited was even formed, and Defendant Bhasker Dhir visited in Washington D.C. in August 2017, along with a trip to Boston, to perform due diligence on numerous fast-casual pizza establishments.  Mr. Dhir's single contact with the forum cannot be considered a specific contact giving rise to any claims here, because the photos he took were not the photographs accused of infringement and the mark "@pizza" has never been, and will not be, used in the U.S.   Other than those contacts to the forum, Defendants have no substantial contacts in the forum.

Moreover, Defendants never anticipated being haled into a U.S. court because this dispute is already being litigated in the UK. Plaintiff has pending UK trademark applications for its marks "&pizza" and "&", and has opposed Defendants' pending UK trademark application for "@pizza". Defendants expect to oppose Plaintiff's trademark applications by the opposition deadline of January 25, 2018. Accordingly, the parties are already engaged in opposition practice relating to Plaintiff's and Defendants' UK rights in their respective "pizza" marks, the outcome of which will likely resolve the entire dispute. Indeed, Plaintiff has already tacitly acknowledged this case fundamentally belongs in a UK forum when Plaintiff engaged UK counsel to send a cease and desist letter to Defendants' UK counsel prior to the Complaint and cited UK claims and case law. This case should be dismissed and appropriately resolved where the alleged infringing conduct is occurring – in the United Kingdom.

## II.      STATEMENT OF FACTS

### A.      Defendants' Lyle and Dhir

Defendant Rupert Lyle is a lifelong UK citizen and resident that resides in Birmingham, England. (Declaration of Rupert Lyle ("Lyle Decl.") ¶ 3.). For the majority of his career, he has worked as a private equity professional and currently is a Partner at the Oakwood Partnership Limited, working with management teams of private, public, and institutionally owned businesses to position these businesses for growth and investment. (*Id.* ¶ 3.) Mr. Lyle is also the founder, and Director of Defendant At Pizza Limited ("At Pizza"). (*Id.* ¶ 4.) The other Director Defendant At Pizza is Defendant Bhasker Dhir. (*Id.*) At Pizza is as a UK company incorporated under the laws of England and its current business is operating a pizza restaurant in Edinburgh, Scotland under the name "@pizza". (*Id.*)

Over his lifetime, Mr. Lyle has visited the U.S. almost exclusively for vacations with his family.  (*Id.* ¶ 5.)  He has never transacted business, regularly solicited business, or derived any substantial revenue from goods used or consumed, or services rendered in the District of Columbia.  (*Id.* ¶ 14.) Mr. Lyle has never entered into or carried out any contracts in the District of Columbia.  (*Id.* ¶ 15.) He has no office, bank accounts, assets, or interest in any property in the District of Columbia.  (*Id.* ¶ 16-18.)

Mr. Dhir is the other Director of At Pizza.  (Declaration of Bhasker Dhir ("Dhir Decl.") ¶ 4.)  Mr. Dhir has also been exclusively a UK citizen and resident. (*Id.* ¶ 3.)  He has over 20 years of experience in the retail and hospitality industry working for prominent food and restaurant brands, such as Pizza Hut, Burger King, Asda, and Wal-Mart in the UK.  (*Id.*)  While Mr. Dhir has visited the U.S. from time to time for vacation, Mr. Dhir has never transacted business, regularly solicited business, or derived any substantial revenue from goods used or consumed, or services rendered in the District of Columbia.  (*Id.* ¶¶ 9-10.)  Mr. Dhir has never entered into or carried out contracts in the District of Columbia.  (*Id.* ¶ 11.)  Nor has Mr. Dhir ever had and office, bank accounts, assets, or any interest in any property in the District of Columbia.  (*Id.* ¶¶ 12-13.)

### B.    Defendant At Pizza Limited

Around April 2016, Mr. Lyle wanted to do something outside the financial services industry and recognized that the UK had few fast-casual dining options, especially in the area of pizza and pasta, and it was a potential market for growth.  (*Id.* ¶ 7.)   Mr. Lyle's vision was to launch a restaurant group that could ultimately offer different food products, such as pizza, noodles, subs, dim sum, or salads in product specific sites using an iconic and easily identifier brand identifier.  (*Id.*)  Around that time, from the UK, Mr. Lyle began to research fast-casual dining options in the U.S. (including the biggest pizza chains - Blaze Pizza, MOD Pizza, Pizza@,

Zpizza, and Pieology) and visited those that were present in the UK, including various fast-casual pizza businesses such MOD, Pizza Storm, Franco Manca, Pizza Union and UK supermarket brands Asda, Sainsbury's and Marks & Spencers. (*Id.* ¶ 8.) Due to the huge success of these fast-casual establishment and lack of any fast-casual pizza presence in the UK, Mr. Lyle opted to start with pizza and thus, came up with the idea for the @pizza brand and @pizza restaurant in approximately June 2016. *Id.*

Since Mr. Lyle had no experience in the retail and hospitality industry, he retained Bhasker Dhir in approximately May 2017 to provide consulting services due to his prior experience. (*Id.* ¶ 9.) Mr. Dhir subsequently became a Director of At Pizza in approximately November 2017. (*Id.* ¶ 9.) After hiring Mr. Dhir, the two men discussed and decided upon the name "@pizza" name. (*Id.* ¶ 10.) Accordingly, on June 19, 2017, At Pizza filed two UK trademark applications, UK00003238199 and UK00003238196 for the marks "@pizza", and "@", respectively, for a number of goods and services, including pizza and restaurants, which passed examination in July 2017. (*Id.* ¶ 10, Exs. 1-2.) Also around this time, Mr. Dhir began the process of hiring a General Manager for the @pizza location. (Dhir Decl. ¶ 5.) Since there was no location open yet, in approximately May – June 2017, Messrs. Lyle and Dhir created a "mood board" type presentation, which was intended for use during recruitment interviews for a General Manager of the @pizza restaurant. (*Id.*; Lyle Decl ¶ 11.) The use of a mood board to convey style is a standard industry practice in the hospitality industry with brand development and was a tool Mr. Dhir had used consistently in his work experience. (Dhir Decl. ¶ 5.) The "mood board" was only intended to be used, and was in fact only used, during the recruitment of a General Manager to show what  a fast casual style of business looked like and the style of business At Pizza intended to operate. (*Id.*) The "mood board" was never intended to reflect the actual business At Pizza was to operate, nor

was it ever distributed, or used as marketing material used to promote the @pizza restaurant. (*Id.*) Mr. Dhir made the "mood board" from various photographs, including three photographs of &pizza locations, which were found on various internet sites in the UK, such as the homepage of Worn Digital Agency and in an article from QSR Magazine. (*Id.* ¶ 6.) Since, Mr. Dhir did not see any registration symbol of © or any other indication that he was not allowed to use any of the photographs, he downloaded them from his home in UK. (*Id.*) Thus, Mr. Dhir did not download any of the alleged &pizza copyrighted photographs identified in the Complaint in the U.S. (*Id.*; Complaint [ECF No. 1], ¶ 27.) Other than Messrs. Lyle and Dhir, only the four individuals interviewing for the General Manager position ever saw the "mood board" and it was in hard copy format. (Dhir Decl. ¶ 7; Lyle Decl. ¶ 11.) The "mood board" has never been distributed, or used in marketing or promotional materials because it was never intended to be anything other than a reference document to show potential General Managers the type of business At Pizza intended to operate. (Dhir Decl. ¶ 7.)

Since Mr. Dhir has worked extensively within the food industry, he has visited many restaurants, including visiting restaurants as part of due diligence. (Dhir Dec. ¶ 8.) In fact, it is customary in brand development and start-ups to conduct research on other similar businesses. (*Id.*) As part of my due diligence and research process in this case, I visited Boston and Washington D.C. in August 2017 and visited numerous fast-casual pizza restaurants, including DC Pizza, Wiseguy, Matchbox, Blaze and an &pizza location in D.C. and Blaze, Oath, and Santarpios in Boston. (*Id.*; Lyle Decl. ¶ 12.) At each location he visited, he was there during business hours and purchased pizza, other food items, and took pictures. (Dhir Decl. ¶ 9.) While he was there to conduct research for At Pizza, the motivation for the pictures was purely personal, as he and his family often make pizza at home and look for new ideas. (*Id.*) In fact, he has never shown any

At Pizza employees or even Mr. Lyle these photos because he considered them for his personal use.  (*Id.*; Lyle Decl. ¶ 12.)  He never accessed any non-public areas of any of the restaurants, told to leave, or told that he was not allowed to take pictures.  (Dhir Decl. ¶ 9.)  No did anyone claiming to represent Plaintiff ask why Mr. Dhir was there, told him he was not allowed to take pictures, or asked him to leave.  (*Id.*)   Mr. Dhir also never saw any signage or other indication stating or implying he was not allowed to take pictures. (*Id.*)   None of the photos he took were used in the "mood board" or in any marketing, promotional, or advertising material for At Pizza.  (*Id.*)

On November 25, 2017, At Pizza's sole location in Edinburgh, Scotland opened to the public.  (*Id.* ¶ 13.)  At Pizza now has 11 employees, all of whom work at the @pizza restaurant and reside in the UK.  (*Id.*)   At Pizza does not have any property, offices, contracts, business listings, contracts, employees, officers, directors or agents in the U.S., and has no plans to do business in the U.S. (*Id.* ¶ 13-20.)

### C.   The Current Dispute

Before the Complaint was filed on November 3, 2017, Plaintiff already was using UK law and counsel to try to stop At Pizza's restaurant through its UK counsel.  On August 28, 2017, Plaintiff sent a cease and desist letter addressed directly to At Pizza Limited, through its UK counsel, Burness Paull LLP.  (Lyle Decl. ¶ 21, Ex. 3.)  The letter alleged infringement under the UK's Section 97 of the Copyright, Designs and Patents Act of 1988 from the use of photographs allegedly belonging to Plaintiff in the "mood board", and also a passing off claim.  (*Id.*)

For its demands, Plaintiff demanded At Pizza remove from circulation all of Plaintiff's photographs used in any materials and cease development of the @pizza brand and associated restaurants.  (*Id.* ¶ 22.)  Furthermore, Plaintiff demanded that At Pizza execute an attached list of undertakings, confirming and agreeing that At Pizza would never again use any of Plaintiff's

photographs, breach the copyrights of Plaintiff, access any of Plaintiff's locations without written consent, or pass off products or services as being connected to or associated with Plaintiff, along with related undertakings.  (*Id.*)  The undertakings were to be "construed and interpreted in accordance with Scots law, and that the Scottish courts will have jurisdiction to hear matters arising out of a breach of these undertakings".  (*Id.*).

At Pizza retained UK counsel to represent At Pizza in responding to the August 28, 2017 cease and desist letter.  (*Id.* ¶ 23.)  On September 4, 2017, At Pizza's, UK counsel, Addleshaw Goddard LLP, sent a response, rebutting each of Plaintiff's claims.  (Lyle Decl. ¶ 23, Ex. 4.)  In particular, the response explained that At Pizza was aware that Plaintiff had filed an UK trademark application No. 15141872 for "&pizza", but had only been able to obtain registration rights over Classes 30 and 32, covering certain beverages and desserts and not Class 42 restaurant services (*Id.*)  Further, At Pizza's counsel corrected Plaintiff and explained that the "presentation" was a "mood board" and the origins of the photos used.  (*Id.* ¶ 24.)  Importantly, At Pizza's counsel also cited and argued UK case law, the decision of the Supreme Court in Starbucks (HK) Limited & Another (Appellants) v. British Sky Broadcasting Group plc & Others (Respondents) (2015) UKSC31 to address Plaintiff's passing off claim.  (*Id.*)  As set forth in the September 4, 2017 response letter, At Pizza agreed to Plaintiff's demands to stop using Plaintiff's photographs and agreed that At Pizza, Rupert Lyle, and Bhasker Dhir would not enter any &pizza restaurant without receiving written consent.  (Lyle Decl. ¶ 25; Dhir Decl. ¶ 16.)  To date, Defendants have complied with these demands. (*Id.*)  However, At Pizza did not agree to cease development of its own @pizza restaurant in Edinburgh, Scotland.  (Lyle Decl. ¶ 25.)  Up until then, Plaintiff postured this dispute appropriately in the UK.

Indeed, Plaintiff is already pursuing At Pizza in the UK.  Plaintiff has a pending Opposition in the UK Intellectual Property Office against At Pizza's UK trademark applications, UK00003238199 and UK00003238196 for the marks "@pizza", and "@", respectively.  (*Id.* ¶ 27; ¶ 10, Exs. 1-2.)  In addition, shortly after the Complaint was filed, Plaintiff filed European Union trademark application No. 15141872 for "&pizza" and UK trademark applications UK00003272397, UK00003272401, and UK00003272402  for the marks "&pizza", "&pizza (stylized)", and "andpizza", respectively, which will Defendants will oppose by the January 25, 2018 deadline.  (*Id.* ¶ 28, Exs. 5-8.)  In short, this dispute will likely need to be resolved in the UK.

### III.    ARGUMENT

#### A.    Legal Standard

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendant. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990); accord *Murphy v. PriceWaterhouseCoopers* LLP, 357 F. Supp. 2d 230, 242 (D.D.C. 2004). The plaintiff must allege specific facts connecting the defendant with the forum. *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). Bare allegations and conclusory statements are insufficient. *See id*. Such a showing must be made with respect to each defendant individually. *Overseas Partners, Inc. v. Progen*, 15 F. Supp. 2d 47, 50 (D.D.C. 1988). Unlike a motion to dismiss brought under Rule 12(b)(6), the Court need not treat all of a plaintiff's allegations as true when determining whether personal jurisdiction exists over a defendant.  Instead, the Court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *U.S. v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000).  In determining whether a factual basis for personal jurisdiction

exists, the court should resolve factual discrepancies in the record in favor of the plaintiff. *Crane*, 894 F.2d at 456.

Regarding a motion to dismiss under Rule 12(b)(6), Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," to encourage brevity and, at the same time, "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Motir Servs. v. Ekwuno*, 191 F. Supp. 3d 98, 105-106 (D.D.C. Jun. 10, 2016) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (ellipses in original; internal quotations and citations omitted); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). The Supreme Court has cautioned that although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (quoting *Iqbal*, 556 U.S. at 678). A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability," but allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556); *see also Rudder v. Williams*, 666 F.3d 790, 794, 399 U.S. App. D.C. 45 (D.C. Cir. 2012).

Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions" or "formulaic recitation of the elements of a cause of action" to provide "grounds" of "entitle[ment] to relief," *Twombly*, 550 U.S. at 555 (alteration in original), and "nudge[ ] [the] claims across the line from conceivable to

plausible," *id*. at 570. Thus, "a complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). In considering a motion to dismiss for failure to plead a claim on which relief can be granted, the court must consider the complaint in its entirety, accepting all factual allegations in the complaint as true, even if unlikely. *Twombly* at 555; *Sissel v. HHS*, 760 F.3d 1, 4 (D.C. Cir. 2014) (in considering Rule 12(b)(6) motion, the "court assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor, but is not required to accept the plaintiff's legal conclusions as correct") (internal quotations and citations omitted). However, a plaintiff needs more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Dismissal under Rule 12(b)(6) is proper when, taking the material allegations of the complaint as admitted, and construing them in plaintiff['s] favor, the court finds that the plaintiff[] has failed to allege all the material elements of [his] cause of action." *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 623, 344 U.S. App. D.C. 245 (D.C. Cir. 2001) (internal citations omitted).

Furthermore, to the extent that a complaint fails to allege facts sufficient to warrant extraterritorial application of the Lanham Act, it fails under both 12(b)(6) and 12(b)(1) for lack of subject matter jurisdiction. *See Zenger-Miller, Inc. v. Training Team, GmbH*, 757 F. Supp. 1062, 1070-72 (N.D. Cal. 1991) (dismissing claims after determining the challenged foreign activities did not support extraterritorial application of the Lanham Act).

## B. Defendants Reside In The UK And Should Be Dismissed For Lack Of Personal Jurisdiction

In addition, all three Defendants should be dismissed because they all reside in the UK, do business exclusively in the UK, and one trip to Washington D.C. are insufficient contacts to

establish jurisdiction. (Complaint [ECF No. 1] p. 2, ¶ 4.)  In short, there is no general or specific jurisdiction over Defendants.[1]

### 1.  There is no general jurisdiction over Defendants

General jurisdiction exists where a non-resident defendant maintains sufficiently systematic and continuous contacts with the forum state, regardless of whether those contacts gave rise to the claim in the particular suit. *Sharp Corp. v. Hisense USA Corp.*, No. 17-1648 (JEB), 2017 U.S. Dist. LEXIS 186686, at *18(D.D.C. Nov. 13, 2017) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)).  In other words, for individuals, general jurisdiction is exercised in the individual's domicile.  For corporations, their domicile is the forum where it is incorporated or has its principal place of business.  *Id.* (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (internal citations omitted)).  Since all three Defendants are foreign and they have no general and systematic relationship with this forum, it is clear that no general jurisdiction exists.  Further, Defendants Lyle and Dhir have been lifelong UK citizens and residents.  (Lyle Decl., ¶ 3; Dhir Decl.,¶ 3.)  Likewise, Defendant At Pizza is a UK company incorporated under the laws of England, has its principal place of business at its pizza restaurant in Edinburgh, Scotland, and has a registered agent in England.  (Lyle Decl., ¶ 4.) Accordingly, Defendants contacts cannot be considered systematic or continuous with Washington D.C. under any interpretation.

### 2.  Acts relating to Plaintiff's claims took place in the UK, not D.C.

There is no specific jurisdiction here either.  That Defendants Lyle or Dhir may have visited a Plaintiff &pizza location in D.C. to observe &pizza's business and take pictures is a red herring.

---

[1] Plaintiff does not appear to assert the Court has general jurisdiction over Defendants, but since it is not clear, Defendants are addressing this argument out of an abundance of caution.  (*See* Complaint, ¶ 4.)

The conduct that gave rise to Plaintiff's claims –Defendants' operation of their @pizza restaurant in Scotland – happened in the UK, not D.C.  Indeed, specific jurisdiction exists where a claim arises out of the non-resident defendant's contacts with the forum and jurisdiction comports with D.C.'s long-arm statute.  *Sharp Corp.*, 2017 U.S. Dist. LEXIS 186686 at *18-19 (internal citations omitted).  The relevant section of District of Columbia's long-arm statute reads "A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . causing tortious injury in the District in the District of Columbia by an act or omission in the District of Columbia."[2] D.C. Code § 13-423(a)(3).  In this case, Plaintiff has plead: "…[Defendants] have sufficient minimum contacts with the forum as a result of business conducted within Washington, D.C….Defendants traveled to Washington, D.C. on multiple occasions as part of an unlawful scheme challenged herein, committed intentional torts causing foreseeable damage in this jurisdiction, downloaded pictures from U.S. servers of architectural and interior designs of numerous Washington, D.C. &pizza locations, and engaged in unlawful acts in this jurisdiction from which the claims herein arise".  (Complaint, ¶ 4.).  Thus, Plaintiff's jurisdictional allegation appears to be based upon Defendants Lyle's and Dhir's alleged visits to D.C. &pizza locations and taking pictures of an &pizza location.  (Complaint, ¶¶ 17, 24-25.)  However, neither Defendants Lyle or Dhir took "numerous trips to D.C." to visit locations of &pizza.  (Lyle Decl. ¶ 6; Dhir Decl. ¶ 10.)  Specifically, Mr. Lyle has only been to D.C. twice in his life in 2015, which was prior to this dispute, and has not been to D.C. since. (Lyle Dec., ¶ 6.)  Accordingly, Mr. Lyle has no contacts with this District that are related to Plaintiff's claims.

---

[2] No other subsection of D.C. Code § 13-423 applies.  *See also* (Lyle Decl., ¶¶ 14-18; Dhir Decl., ¶¶ 11-15.)

As for Mr. Dhir and At Pizza, Mr. Dhir did visit an &pizza location in D.C. and did take pictures in August 2017, but except for the trespass claim, his visit is not what gave rise to Plaintiff's claims.   (Dhir Decl, ¶ 10.)   Plaintiff's claims are U.S. copyright infringement, UK common law passing off, federal trademark infringement, federal unfair competition, and trespass. (*See* Complaint.)   With the exception of the trespass claim, the conduct giving rise to Plaintiff's claims stems from Defendants' conduct in the UK through alleged downloading pictures which occurred in the UK, use of the mark "@pizza", and the opening of the @pizza restaurant in Scotland.  *Id.*   In short, the relationship between Mr. Dhir's visit and the claims is tenuous at best, and insufficiently related to the claims to support specific jurisdiction.  *See* Sharp, 2017 U.S. Dist. LEXIS 186686 at *21 (no personal jurisdiction where plaintiff's grievance was regarding an arbitration order regarding defendants' sale of televisions, not defendants' sale of televisions in the forum).  Plaintiff has failed to establish personal jurisdiction over Defendants and the case should be dismissed for that reason.

### C.   Plaintiff's Claims Fail Under Rules 12(b)(6) and 12(b)(1)

In addition to a lack of personal jurisdiction, Plaintiff's claim fail to sufficiently allege any cause of action under Rules 12(b)(6) and 12(b)(1).

#### 1.   Defendants Lyle and Dhir Should Be Dismissed Under Rule 12(b)(6) Because Plaintiff Has No Facts Supporting Alter-Ego Liability

Defendants Lyle and Dhir should be dismissed because Plaintiff has not plead *any* facts that support an alter ego theory of liability.  Although a plaintiff need not "show at the pleadings stage . . . [that which] he needs to show to prevail at trial," the plaintiff must still allege sufficient facts regarding an alter ego relationship to "satisfy Rule 8(a)(2) and *Iqbal*."  *Motir Servs. v. Ekwuno,* 191 F. Supp. 3d 98, 109, (D.D.C. Jun. 10, 2016) (citing *McWilliams Ballard, Inc. v.*

*Broadway Mgmt. Co.*, 636 F. Supp. 2d 1, 8-9 (D.D.C. 2009); *see also Regan v. Spicer HB, LLC*, 134 F. Supp. 3d 21, 40 (D.D.C. 2015)).   Here, Plaintiff has relied upon a single allegation that: "[f]or the actions alleged herein, each of the Defendants was the officer, director, agent and alter ego of the other, such that they are jointly and severally liable for the actions alleged herein". (Complaint [ECF No. 1], ¶ 10.)   Reviewing the rest of the Complaint finds no other allegations related to the elements of alter-ego liability[3], much less providing any factual allegations.   *See* Complaint.   This is the exact type of conclusory allegation that *Iqbal* held should not be accepted as true and correct under a Rule 12(b)(6) analysis, and even more so for the "extraordinary measure" of veil-piercing.   *Motir Servs.*, 191 F. Supp. 3d at 109 ("conclusory allegations about an ultimate legal question need not be accepted as true and correct " and "D.C. Circuit has described [veil-piercing] as an 'extraordinary' measure not be used lightly") (internal citations omitted).

Moreover, none of the remaining allegations in the Complaint as referenced in Paragraph 10 could be construed as using the corporate form to perpetuate a fraud.   The allegations generally state conduct such as Defendants Lyle and Dhir "toured a number of &pizza locations in Washington D.C.", "took extensive pictures (not identifying themselves as the competition)", "returned to Scotland, U.K. with this copyrighted information", "designed the copycat @pizza restaurants as derivative designs of &pizza's restaurants", and circulated a "marketing deck…to its business partners, with pictures of &pizza's storefront passed off as an @pizza storefront."

---

[3] In order to pierce a corporate veil and hold individual shareholders liable, there must be "unity of ownership and interest", and "it must appear that the corporation is not only controlled by those persons, but also that the separateness of the persons and the corporation has ceased and…an adherence to the fiction of the separate existence of the existence of the corporation would sanction a fraud or promote injustice".   *Camacho v. 1440 Rhode Island Ave. Corp.*, 620 A.2d 242, 249 (D.C. Cir. 1993) (internal citations omitted).   Thus, factual allegations should reflect that corporate formalities were disregarded, the corporate defendant was purposefully undercapitalized, or that the corporate defendant's funds were commingled with or diverted to the individual defendant for non-corporate or personal uses.   *Motir Servs.*, 191 F. Supp. 3d at 109.

(Complaint [ECF No. 1], ¶¶ 17, 24-26.)  None of these allegations or others indicate that any conduct happened outside of Defendants Lyle's and Dhir's performance of their duties as employees and officers of Defendant At Pizza.  *See Motir Servs.* 191 F. Supp. 3d at 110.  Since no reasonable inference can be drawn that Defendants Lyle and Dhir served as alter egos of At Pizza, and thus, claims alleged Defendants Lyle and Dhir in their personal capacity should be dismissed.

### 2. Plaintiff's Trespass Claim Fails Under Rule 12(b)(6) Because &pizza Is Publicly Accessible And Mr. Dhir Never Misrepresented His Identity

Plaintiff's trespass claim should also be dismissed because &pizza is a publicly accessible business and Mr. Dhir never mispresented his identity. Trespass requires: "(i) an unauthorized entry (ii) onto the plaintiff's property (iii) that interferes with the plaintiff's possessory interest." *Democracy Partners v. Project Veritas Action Fund*, Case No. 17-1047, 2018 U.S. Dist. LEXIS 1270, *17, 2018 WL 294531 (D.D.C. Jan. 4, 2018) (internal citations omitted).  Plaintiff fails to plead that Defendants made any unauthorized entry.  Rather, Plaintiff's sole factual allegation regarding this element is that Defendants "entered into &pizza's Washington, D.C. locations masquerading as customers, took extensive pictures (not identifying themselves as the competition), accessed all parts of the restaurant that they could to observe its design, and returned to Scotland, U.K. with this copyrighted information".  (Complaint, ¶ 25; *see also id.*, ¶ 83.) However, &pizza is a publicly accessible business and there can be no unauthorized entry, even if Defendants were "masquerading" as customers. *See Democracy Partners*, 2018 U.S. Dist. LEXIS 1270 at *18-19 (discussing where courts have rejected trespass claims against defendants who misrepresented their identities when recordings took place in publicly accessible places). Moreover, Mr. Dhir did not mispresent his identity.  He visited Boston and Washington in August 2017 as the due diligence process in starting a new business.  (Dhir Decl., ¶ 8.) Researching similar

15

businesses is customary in the retail and hospitality industry, and Mr. Dhir accordingly visited numerous fast-casual pizza restaurants, including DC Pizza, Wiseguy, Matchbox, Blaze, and an &pizza location. (*Id*.) Mr. Dhir was a customer at each of these establishments, as he visited every establishment during normal business hours, ordered pizza and other food items, and took pictures. (*Id.*, ¶ 9.) Mr. Dhir never accessed non-public spaces in any establishment. (*Id*.) With regards to &pizza, no one claiming to represent Plaintiff ever asked why Mr. Dhir was there, told him he was not allowed to take pictures, or asked him to leave. (*Id*.) Mr. Dhir also never saw any signage or other indication stating or implying he was not allowed to take pictures.[4] (*Id.*) Moreover, Plaintiff does not have a location in the UK, and cannot be considered competitors to Defendants, who have no plans to conduct business in the U.S. or open a U.S. @pizza location. (Lyle Dec., ¶ 13.) Since &pizza is a publicly accessible space, Plaintiff's trespass claim fails to plead that there was any unauthorized entry. For that reason, the Court should dismiss this claim pursuant to Rule 12(b)(6).

### 3. Plaintiff's Claim of Copyright Infringement Fails to State a Claim Upon Which Relief Can Be Granted

#### i. Plaintiff has no copyright registrations under 17 U.S.C. §411(a)

Plaintiff's copyright infringement claim fails to plead that the copyrights at issue have been registered. A claim for copyright infringement requires: (1) which specific original works form the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) by what acts [and] during what time the defendant infringed the copyright." *ICC Evaluation Serv., LLC v. Int'l Ass'n*

---

[4] To the contrary, these days most businesses encourage customers to take pictures for upload to social media. (Dhir Decl., ¶ 9.)

*of Plumbing & Mech. Officials*, Case No. 16-54 (EGS), 2016 U.S. Dist. LEXIS 153518 at *5

(citing *Newborn v. Yahoo!, Inc.*, 391 F. Supp. 2d 181, 186 (D.D.C. 2005) (D.D.C. Sept. 19, 2016).

Subject to certain exceptions, the Copyright Act requires copyright holders to register their works

before suing for copyright infringement. 17 U.S.C. § 411(a); *Reed Elsevier, Inc. v. Muchnick*, 559

U.S. 154, 157 (2010).   Moreover, although there is a Circuit split, the majority of courts in the

District of Columbia require that a plaintiff alleging a claim of copyright infringement must obtain

a certificate of registration from the Copyright Office prior to initiating a lawsuit.  *Strategy Source*

*v. Lee*, 233 F. Supp. 2d 1 (D.D.C. 2002); *Newborn v. Yahoo!*, Inc., 391 F. Supp. 2d 181 (D.D.C.

2005); *Potter v. Toei Animation Inc.*, 839 F. Supp. 2d 49 (D.D.C. 2012); *ICC Evaluation Serv.*

*LLC v. Int'l Ass'n of Plumbing Mech. Officials*, 2016 U.S. Dist. LEXIS 153518 (D.D.C. 2016); *but*

*see Int'l Kitchen Exhaust Cleaning Ass'n v. Power Washers of N. Am.*, 81 F. Supp. 2d 70 (D.D.C.

2000) (applying the application approach; *Prunte v. Universal Music Group*, 484 F. Supp. 2d 32,

(D.D.C. 2007) (applying the application approach).  In this case, Paragraph 35 of the Complaint

alleges copyright ownership in the architectural and interior design plans and in photographs

depicting Plaintiff's restaurants.  However, the allegations only provide copyright application

numbers –not registrations– for the photographs and none for the architectural and interior designs.

(Complaint, ¶ 35.)  Accordingly, Plaintiff's copyright claim fails to plead that the third element

that the copyrights have been registered in accordance with the statute, and this claim should be

dismissed.

### ii.  Plaintiff Has No Valid Copyright Rights In The Interior Design Of Its Restaurants

Plaintiff's copyright claim also fails to plead any valid copyrights in the interior design of

its restaurants.   (Complaint, ¶ 35 ("&pizza owns all copyrights and interest in and to the

architectural and interior design plans and[sic] for its restaurants…".) "The Copyright Act protects

17

"the overall form of an architectural work as well as the arrangement and composition of spaces and elements in the design," but it does not protect interior design, such as the selection and placement of furniture, lighting, paint, or similar items. 17 U.S.C. § 101 (definition of "architectural work" is the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings). Thus, Plaintiff's copyright claim should be dismissed at least as it relates to its interior and look and feel.

### iii.   No alleged act of infringement occurred in the U.S.

The copyright claim also fails because the alleged downloading of &pizza's photographs or the copying of the architectural and interior design plans did not occur in the U.S. (Complaint, ¶¶ 34-47.) Generally, the Copyright Act does not have extraterritorial effect. *Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102, 123 (D.D.C. 2011) (citing *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co*., 24 F.3d 1088, 1095-96 (9th Cir. 1994)). Indeed, implicit in 17 U.S.C. § 106 is a further requirement that the infringement of Plaintiff's copyrights occur inside the United States. *See Columbia Pictures Indus. v. Fung*, 96 U.S.P.Q.2D (BNA) 1620, 1628-29 (C.D. Cal. 2009); *Allarcom Pay Television, Ltd. v. Gen'l Instrument Corp*., 69 F.3d 381, 387 (9th Cir. 1995). Notwithstanding the general rule barring extraterritorial application of the U.S. Copyright Act, courts have permitted claims of infringement within the United States only when (1) infringement occurs within the United States, and (2) this act initiates further infringement abroad. Under this extraterritoriality exception, liability is based on the theory that the infringing use would have been actionable even if the subsequent foreign distribution that stemmed from that use never took place. *Subafilms*, 24 F.3d at 1094.

Here, any alleged infringement took place in the UK. Even if the servers hosting the photographs were in the U.S., Mr. Dhir committed the alleged act of infringement when he

downloaded the &pizza photographs from his home in the UK.  (Dhir Decl, ¶ 6); 17 U.S.C. § 106 (enumerating exclusive rights); *Nu Image Inc. v. Doe*, 799 F. Supp. 2d 34, 39-40 (D.D.C. 2011) (location of infringing act is defendant and defendant's computer); *Shaheen v. Smith*, 994 F. Supp. 2d 77, 83 (D.D.C. 2013) ("[N]othing in the plaintiff's Response or Complaint demonstrates that the defendants' website was created, is maintained, or has its servers in Washington, D.C."). *see also Allarcom Pay Television Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 387 (9th Cir. 1995) (same); *Columbia Pictures Indus.*, 96 U.S.P.Q.2D (BNA) at 1629; *Elsevier Ltd. v. Chitika, Inc.*, 826 F. Supp. 2d 398, 403 (D. Mass. 2011).  Moreover, Mr. Dhir downloaded these photographs for the "mood board" from his home in the UK, which was prior to his August 2017 visit to D.C. and thus, did not include any of the photographs he took of the &pizza restaurant.  (Dhir Decl., ¶ 6.)[5]  Finally, with respect to the architectural designs of Plaintiff's restaurant, any infringement is occurring at the location of Defendants' @pizza restaurant in Edinburgh, Scotland.

### 3.   The Lanham Act claims should be dismissed under Rule 12(b)(6) and Rule 12(b)(1)

Unfair competition under 15 U.S.C § 1125 requires that Defendant: (1) used a designation or false designation of origin, (2) in interstate commerce, (3) in connection with goods or services, (4) the designation is likely to cause confusion, and (5) plaintiff already has been or is likely to be damaged. See 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:13 (2009 ed.). A trademark infringement claim under 15 U.S.C. § 1114 has nearly identical elements to an unfair competition claims, except that the registration of the mark serves as *prima facie* evidence of the mark's validity and the registrant's exclusive right to use the mark in commerce.

---

[5] Even if Plaintiff alleges infringement of the photographs Mr. Dhir took in August 2017, the Copyright Act specifically allows the making, distribution, and display of photographs showing an architectural work if it is located in or visible from a public space.  17 U.S.C. § 120(a).

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.*, 69 F. Supp. 3d 175,

186 (D.D.C. 2014).

### a.   There is no alleged substantial effect on U.S. commerce

Defendants' use of "@pizza" will have no substantial effects on U.S. commerce.  While the

Lanham Act may can be applied to foreign acts of infringement, extraterritorial application is only

appropriate when the actions produce substantial effect in the U.S.  15 U.S.C. § 1127 ("The intent

of this chapter is to regulate commerce within the control of Congress…"); *Guantanamera Cigar*

*Co. v. Corporacion Habanos, S.A.*, 672 F. Supp. 2d 106, 112, (D.D.C. 2009).  In addition, when

the purported infringer is not a U.S. citizen, and the alleged activities occur outside the United

States, extraterritorial application is appropriate only if 1) the complained of activities have a

substantial effect on U.S. commerce that is sufficiently great to be a cognizable injury to Plaintiff

under the Lanham Act and 2) the interests and links to American commerce must be sufficiently

strong in relation to those of other nations to justify, in terms of comity, an extraterritorial

application of the act. *Guantanamera Cigar Co.*, 672 F. Supp. 2d at 112 (applying test in *McBee*

*v. Delica Co.*, 417 F.3d 107, 120 (1st Cir. 2005)).  In other words, this test focuses on whether

Defendants' foreign activities will 1) harm the mark's reputation in the United States; 2) confuse

American consumers as to source or affiliation; and 3) divert U.S. sales.  *McBee*, 417 F.3d at 120.

In this case, the Complaint alleges:

65. Such harm to U.S. commerce is based on at least the following:

> a. The largest demographic group of visitors to Edinburgh are 25-34
> year olds, the target demographic of @pizza. The largest group of
> tourists to Edinburgh is from the U.S. Of the 100 million pounds
> spent by U.S. tourists in Edinburgh each year, over 25% of that
> money goes to dining. Thus, a high percent of tourists dining in
> Edinburgh are from the U.S. and, on information and belief, familiar
> with &pizza's restaurant chain, but are likely to be confused as to an
> association or sponsorship between &pizza and @pizza.

 b. Similarly, as alleged above, a substantial number of university students in Edinburgh come from U.S. states in which &pizza is located. These students are familiar with &pizza and likely to be confused as to an affiliation between @pizza and &pizza because of the similarity of the marks, compounded by @pizza's careful efforts to emulate &pizza's restaurant model and design.

(Complaint, ¶¶ 65, 75.) As alleged, even if true, Defendants activities in total relate to the @pizza location in Edinburgh, Scotland. (*Id.*, ¶ 33.)   Even if Defendants' @pizza location is wildly successful, it is not reasonable to infer that Defendants' one location would generate such substantial revenues that would have any substantial effect on U.S. commerce and &pizza's reputation in the U.S. *Guantanamera*, 672 F. Supp. 2d at 112-113 (granting motion to dismiss where one advertisement in a foreign magazine failed to constitute "substantial effects" compared to cases where there was "extensive use" of the mark in question). Further, a U.S. judgment may conflict with Defendants' trademark rights in the UK.  Defendants have filed two UK trademark applications, which were allowed, but have been opposed by Plaintiff.  (Lyle Decl., ¶ 10, Exs. 1-2.) If Defendants prevail on the opposition proceedings, Defendants would have valid trademark rights in the UK and this would conflict an injunctive order issued by this Court.  Under the "substantial effects" test, the Court should decline to exercise jurisdiction and interfere with Defendants' foreign use of the mark.

### 4.  There are compelling reasons to decline supplemental jurisdiction over Plaintiff's UK common law "passing off" claim

 Finally, the Court should decline to exercise supplemental jurisdiction over Plaintiff's UK "passing off" claim due to same principles of comity implicated in the Lanham Act claims. Under 28 U.S.C. § 1367, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action…that they form part of the same case or controversy under Article III of the United

States Constitution".  28 U.S.C. § 1367.  While in certain instances supplemental jurisdiction has been found to extend to include foreign law claims, principles of comity are held to be compelling reasons to decline jurisdiction over a foreign claim.  *Voda v. Codis Corp.*, 476 F.3d 887, 898 (Fed. Cir. 2007) (holding that district court abused discretion in exercising supplemental jurisdiction over claims of infringement of foreign patents); *see also Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*, 825 F. Supp. 73, 76 (D. Del. 1993) (declining to exercise supplemental jurisdiction to enforce foreign patent due to application of Japanese law).  Indeed, the Federal Circuit found that judicial economy nor a jury would not be served in having U.S. courts applying multiple legal schemes and determining the legal boundaries of a right granted by another sovereign.  *Voda*, 476 F.3d at 899-900.  Here, Plaintiff's "passing off" claim requires the Court to understand and apply UK law, including potentially an injunctive order that will need to be enforced in the UK.  For that reason, the Court should decline to exercise supplemental jurisdiction over Plaintiff's UK "passing off" claim and dismiss this claim as well.

Pursuant to LCvR 7(f), Defendants also request oral argument.

## III.    CONCLUSION

In light of the above, Defendants respectfully request this Court to grant their Motion to Dismiss.

Dated: January 12, 2018

Respectfully submitted,

By: /s/ Patricia Y. Ho

Patricia Y. Ho (*admitted pro hac vice*)
1560 Broadway, Suite 1200
Denver, CO 80202-5145
(303) 863-9700
pho@sheridanross.com

Matthew J. Dowd (DC Bar No. 998373)
Dowd PLLC
1717 Pennsylvania Avenue, NW
Washington, D.C. 20006
mjdowd@dowdpllc.com
(202) 573-3853

*Counsel for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on this January 12, 2018, the foregoing document has been served on Plaintiff's counsel via the Court's ECF system.  Further, a courtesy copy of the foregoing document was sent to Plaintiff's counsel via e-mail as follows:


By: <u>/s/ Patricia Y. Ho</u>
Patricia Y. Ho (*admitted pro hac vice*)
1560 Broadway, Suite 1200
Denver, CO 80202-5145
(303) 863-9700
pho@sheridanross.com

*Counsel for Defendants*