**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IMAPIZZA, LLC**, | |
| *Plaintiff*, | |
| vs. | CIVIL ACTION NO. 1:17-cv-02327-TJK |
| **AT PIZZA LIMITED**, *et al.*, | |
| *Defendants*. | |

<u>**PLAINTIFF IMAPIZZA, LLC.'S MEMORANDUM OF POINTS AND AUTHORITIES**</u>

<u>**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**</u>

## I.    INTRODUCTION

The Motion to Dismiss ("Motion") should be denied.  Defendants had no problem traveling to D.C. to carry out their scheme to copy Plaintiff IMA Pizza, LLC's ("&pizza") restaurant.  Now that they have been sued here (in Plaintiff's home forum), they claim it is unfair to apply U.S. laws and personal jurisdiction to them.  In their Motion, Defendants admit they came here, visited &pizza and stole its IP, but factually argue why they were here (arguing the bases for their visit).  But factual disputes on the merits are inappropriate at this stage.  Plaintiff &pizza properly brought claims in this forum against Defendants – like any thief being hailed back into the forum they stole from, their actions should be adjudicated here.  Tellingly, this is the ***only*** forum in which Plaintiff's trespass claim should be judged.  As at least this claim must be adjudicated here, it is reasonable for all claims to be decided together against these parties.

Looking more closely at each of the arguments raised in the Motion further confirms it should be denied in full.  Turning first to Defendant's four Rule 12(b)(6) challenges, they do not justify dismissal of any claim.

<u>First</u>, the Complaint alleged the independent actions and involvement of Defendants Rupert Lyle and Bhasker Dhir, irrespective of any alter ego liability for Defendant At Pizza Ltd. ("@pizza"), making the alter ego challenge premature.  Thus, they are proper defendants.

<u>Second</u>, the challenge to the unauthorized-entry prong of the trespass claim fails because the authority cited by Defendants' own caselaw holds that a competitor's use of access for tortious acts pleads a trespass claim, even where consent is pled.  *Counsel on American-Islamic Rels. Action Network v. Gaubatz*, 793 F. Supp. 2d 311, 345 (D.D.C. 2011) (cited by *Democracy Partners*, 2018 U.S. Dist. LEXIS 1270, **18-19 (D.D.C. Jan. 4, 2018))**.

<u>Third</u>, Defendants' three challenges to the U.S. copyright claim fail because: (1) the weight of authority permits &pizza to pursue this claim without waiting for its applications to

mature to registration, (2) &pizza's interior designs are original and copyrightable under 17 U.S.C. §101, and (3) the Complaint overcomes the non-jurisdictional extraterritoriality challenge by sufficiently pleading infringement in the U.S.  The Defendants then focus on the factual bases for the copyright claim's allegations, which is inappropriate at this stage.

Fourth, the extraterritoriality challenge to &pizza's Lanham Act claims fails because the Complaint pleads an abundance of factual allegations supporting the intended and substantial effect of Defendants' conduct on a U.S. company and U.S. commerce.  Again, extraterritoriality is not jurisdictional and this issue is resolved solely with reference to the pleadings.

The Rule 12(b)(1) challenge to the supplemental jurisdiction over the U.K. passing off claim fails because of the Court's mandatory original diversity jurisdiction over this claim.

Finally, the Rule 12(b)(2) challenge to this Court's personal jurisdiction fails.  The Motion largely failed to even set out the appropriate jurisdictional standards, let alone apply them, and this argument is accordingly waived.  In any event, Defendants try to dispute jurisdictional facts that are too intertwined with the merits of the dispute to be decided at this preliminary stage.  Turning to the basis of jurisdiction, &pizza makes a *prima facie* showing of specific jurisdiction under D.C. Code § 13-423(a)(1) and (for the federal claims) F.R.C.P. 4(k)(2).  Both bases are coextensive with and subsumed by the U.S. Constitutional analysis.  Each of the claims arise from Defendants' intentional tortious scheme deliberately directed at D.C. and the U.S., where &pizza felt the brunt of the harm to its real property and intellectual property interests.  The Complaint alleges Defendants also trespassed and engaged in wrongful conduct in this forum in order to orchestrate their copycat scheme.  Plaintiff &pizza's home forum thus has jurisdiction to hear these claims.

Thus, as discussed in more detail below, the Motion to Dismiss should be denied.

## II.    BACKGROUND FACTS

### A.    Plaintiff's &pizza Business Model and Pending Expansion

Plaintiff's &pizza restaurant chain is extremely successful, having received significant positive media coverage and recently dubbed "the next generation of pizza" (among other accolades).  Complaint ¶¶11, 23.  &pizza owns three U.S. trademark registrations for its &pizza marks in restaurant services.  *Id.* & Exs. 1-8.  It has restaurants in Washington D.C. and throughout the East Coast.  *Id.*  This anti-establishment establishment is renowned for its creative pies and craft beverages, localized shop design, and its strength, unity and vibe.  *Id.* ¶12.

As a fast-growing restaurant chain in the U.S., &pizza devoted substantial resources towards and is actively pursuing expansion into the U.K., including engaging in discussions with potential business partners there and applying for trademarks.  Complaint ¶¶ 12, 50.  Even without an open restaurant in the U.K., &pizza has developed significant goodwill in the U.K. for its &pizza restaurants, including its "&pizza" mark and other features of its business identity.  *Id.* ¶¶ 13-16, 50, 65.

### B.    Defendants' Tortious Conduct as Alleged in the Complaint

#### 1.    Defendants' Copycat Scheme

While &pizza worked hard to expand, Defendants hatched a plan to open a copycat of &pizza in the U.K.  Complaint ¶¶ 17, 23-24.   Defendants apparently knew that &pizza was in the process of expanding its &pizza restaurant chain to the U.K., as they were careful to never approach &pizza to advise it of their plans.  *Id.* ¶17.  But to perfect this scheme, Defendants needed to come to the U.S. to steal &pizza's rights.  *Id.* ¶ 24.[1]

---

[1] Importantly, the individual defendants Lyle and Dhir were the primary actors and directly engaged in the conduct discussed below.  *See, e.g.* Complaint ¶¶ 8-9, 17-18.  Any actions of @pizza not taken by these two individuals were directed by them as its owners, officers and managers.  *Id.* ¶10.

### 2.    Defendants' Execution of their Scheme

To fully copy &pizza, Defendants needed to observe &pizza's restaurant locations in-person.  Complaint ¶ 24.  Hence, Defendant Lyle toured a number of &pizza locations in D.C.  *Id.* ¶ 17.  Realizing the uniqueness of &pizza's restaurant chain, he had Defendant Dhir also take numerous trips to visit the D.C. locations of &pizza.  *Id.*  Without authorization, they took extensive pictures of &pizza's D.C. locations, interior designs and operations, accessed all parts of the restaurants to observe their design, and returned with this copyrighted information to the U.K.  *Id.* ¶¶ 24-25, 74.  They later returned to Plaintiff's D.C. &pizza premises with the general manager they had hired, conducting secret, on-the-job training in order to ensure the most accurate copying of &pizza's brand, look and feel, and to study what they themselves referred to as their "competitor."  *Id.* ¶ 74.  The general manager and others that Lyle and Dhir sent to train at &pizza's restaurants were undisclosed agents of the Defendants.  *Id.* ¶84.

These entries onto &pizza's numerous D.C. premises were without authorization.  Complaint ¶¶ 81, 85.  Nor did Defendants have permission or consent for the purpose of: (1) taking unauthorized pictures, (2) stealing &pizza's intellectual property, (3) training @pizza's management, (4) perfecting a scheme of unfair competition, and (5) taking unauthorized information to best pass off their @pizza establishments as &pizza in their marketing material.  *Id.* ¶ 82.

Defendants' preparatory activity also included downloading pictures of &pizza's restaurants and interior design from a number of U.S. websites.  The downloaded pictures included interiors of seven of &pizza's D.C. restaurants, including three pictures that themselves were taken for &pizza by its advertising agencies and owned by &pizza (in addition to its ownership of the depicted interior designs).  Complaint ¶¶ 28, 40.  This "access to &pizza's copyrighted works [was] in the United States."  *Id.* ¶36.  The downloading and server locations

were both alleged to have occurred "in the United States," including U.S. servers in New Jersey, Virginia, California and Arizona.  *Id.* ¶ 39.

&pizza has already filed applications for U.S. copyright registration in each of the restaurant designs as well as the three photographic works themselves.  Complaint ¶ 35 (listing application numbers).  The elements comprising these works are original.  *Id.* ¶ 35.  Even a basic review of the interior pictures shown in the Complaint confirms the original and copyrightable features, including the oversized monochromatic pictures of people in striking poses, block geometric patterns and well-defined complimentary art, a careful arrangement of restaurant layout, and a balance of monochromatic elements carried throughout the restaurant, among other elements.  *Id.* ¶ 27.  In fact, &pizza was so creative in its interior designs that it won Restaurant Development + Design's 2016 "Outside the Box Design Award."  *Id.* ¶ 23.

### 3. Plaintiff Discovers Defendants' Scheme and Defendants Become Even More Flagrant in their Copying

When &pizza ultimately learned of Defendants' plans and demanded that @pizza cease its copycat efforts, Defendants unremorsefully refused.  Complaint ¶¶ 30-31.  When @pizza's potential business partners expressed concern about the replication of &pizza, they were told that Lyle and Dhir intended to take still more trips to &pizza's D.C. restaurants to carefully observe its design, operation and marketing.  *Id.* ¶ 32.

Defendants then followed through on their copycat scheme.  By their own admission, they used the pictures downloaded in the U.S. from U.S. servers and inserted those pictures into marketing material circulated to @pizza's business partners.  Complaint ¶¶ 26, 27, 39; Dhir Decl. ¶¶ 5-6; Lyle Decl. ¶ 11.  The marketing materials passed off the critical design elements of the &pizza restaurants as @pizza's own, and were so blatant that – *by Defendants' own admission* – they included (1) &pizza's "LOVE&pizza" and "You&pizza" to-go boxes and (2) a

picture of a woman with an "&" tattoo seen in an image hung behind the counter:



Complaint ¶¶ 26, 27, 29; Dhir Decl. ¶ 6.

Defendants proceeded to launch their first @pizza restaurant. Everything about the restaurant was designed to maximize its position as an &pizza copycat, including: (1) the copycat buildout of the interior, (2) carte blanche copying of &pizza's other brand identifiers, and (3) selection of a foreign location likely to best trade off of &pizza's existing goodwill:

First, Defendants' U.S. copying and meticulous study of &pizza paid off when the information and pictures acquired from the U.S. were used to create a clone of &pizza. The trespassing, extensive photographing of the store designs, and sending of @pizza staff to D.C.

for secret on-site training were some of the "acts of unfair competition in the U.S. that enabled this cloning." *Id.* ¶¶ 72, 74. This U.S. reconnaissance paid off with a built-out clone restaurant with derivative architectural and interior designs substantially similar to the designs of &pizza's architectural designs. *Id.* ¶ 42. Thus, Defendants successfully captured the look and feel of &pizza's U.S. designs. *Id.* ¶¶ 42-43.

Second, the Defendants went beyond the interior design to steal the brand identity of &pizza. They used their infringement of &pizza's trademark and other brand-identity features to blatantly misrepresent an affiliation or association between their @pizza restaurants and &pizza. Complaint ¶ 53. For example, this included use of the confusingly similar "@pizza" mark, the pizza selections (right down to every last nuanced detail), the advertised "core values," the non-functional elongated oval shape of the pizzas, the non-functional elongated rectangular pizza to-go box, and even the name coined for its staff. *Id.* ¶¶ 19-20, 53. As a result, Defendants created an unauthorized U.K. extension of &pizza's U.S.-based restaurant chain.

Third, the location itself was deliberately chosen to trade off &pizza's goodwill. Defendants opened their first @pizza restaurant in a country in which &pizza (1) already had goodwill in its name and business identity; (2) high population of U.S. students and tourists; and (2) was actively pursuing expansion. Complaint ¶¶ 50-51, 65. Defendants selected the location most likely to attract thought-leading consumers familiar with the goodwill of &pizza, ensuring that a substantial base of their customers would be U.S. consumers already familiar with &pizza and glad to find a nearby affiliate. *Id.* ¶ 55.

**4.    The Substantial Resulting Harm to &pizza and U.S. Commerce**

The resulting harm to &pizza in the D.C. forum and to U.S. foreign commerce (the flip side of the benefit to @pizza from its copycatting) foreseeably occurred.

Defendants' wrongful acts were calculated to and are causing substantial harm to &pizza's U.S.-based restaurant chain, including its business and goodwill. Complaint ¶¶ 54, 58, 64. Defendants so meticulously copied the trademark and model of &pizza as to show an explicit purpose to cause this harm or effect on a U.S. business and U.S. commerce. *Id.* ¶ 66(e). Consumers familiar with &pizza's restaurant chain (in large measure thought leaders from the U.S. abroad) are likely confused as to an association or sponsorship between &pizza and @pizza. *Id.* ¶¶ 55, 65(b).

And for those consumers currently unfamiliar with &pizza, when &pizza does open its expansion restaurants in the U.K. it may be viewed by those consumers as the junior or infringing user of @pizza's name and identity, further tarnishing and damaging &pizza's goodwill and business. *Id.* ¶ 60.

As &pizza is located predominantly in the U.S., one of the largest effects of the infringement is to a U.S. company in the U.S. *Id.* ¶ 66(d). This harm was fully foreseeable and Defendants were forewarned months before they opened their first location. *Id.* ¶¶ 66(f) & 57.

## C.    The Defendants' Problematic Declarations

Defendants Lyle and Dhir both filed declarations. These declarations (1) contain strong admissions and (2) attempt to improperly frontload a trial on the merits by advancing incredible assertions. Thus, they should be disregarded.

As a preliminarily matter, the Declarations are not subscribed to "under the laws of the United States of America" as is required of foreign declarations under 28 U.S.C. § 1746(2), a particularly critical requirement for admissibility where the foreign declarant disputes the court's jurisdiction. *In re Barkats*, 2014 Bankr. LEXIS 2882 *6 (D.D.C. Bkrptcy. Jul. 2, 2014) (striking declaration); *Eli Lilly & Co. v. Arch Ins. Co.*, 2017 U.S. Dist. LEXIS 105833, *17-19 (S.D. Ind. Jul. 10, 2017) (requirement is "critical" where jurisdiction disputed); *Digisound-WIE, Inc. v.*

8

*BeStar Techs., Inc.*, 2008 U.S. Dist. LEXIS 39860, *4-5 (N.D. Ill. May 16, 2008) (jurisdictional motion); *Ostrow v. Globecast Am. Inc.*, 2011 U.S. Dist. LEXIS 117889, *11-12 n.4 (S.D. Fla. Oct. 13, 2011) (mandatory requirement).[2]

### 1.    The Admissions In Defendants' Declarations

The declarations submitted by Defendants Lyle and Dhir admit critical facts, including that: (1) both Lyle and Dhir came to D.C. on multiple separate trips and had no express permission for entering the &pizza restaurants, (Lyle Decl. ¶¶ 5-6; Dhir Decl. ¶ 8); (2) Dhir went to D.C. as an essential step in his research for the @pizza restaurant and did in fact take many pictures of &pizza, (Dhir Decl. ¶ 6); (3) @pizza used pictures Dhir downloaded from U.S. servers for a presentation used for @pizza's business purposes, (*id.* ¶ 5); and (4) Dhir's use of Plaintiff's pictures to sell his brand early on "was a tool Mr. Dhir had used consistently in his work experience." Mtn. 4 citing Dhir. Decl. ¶ 5.

And while Defendants offer a number of explanations hoping to detract from the significance of their U.S. visits, Defendants admit to their U.S. contacts and an intentional scheme to take a D.C. restaurant with U.K. expansion efforts and beat them in opening a copycat U.K. restaurant first. It is undisputed that the restaurant Defendants ultimately opened was in fact a "clone restaurant with derivative architectural and interior designs" compounded by the confusing similarity of the "@pizza" mark to "&pizza." Complaint ¶¶ 43 & 64.

### 2.    Defendants' Declarations Lack Credibility But Attempt to Frontload a Trial on the Merits

Failing to appreciate that this is a motion to dismiss, Defendants focus almost exclusively at disputing the facts supporting the claims – which is improper at this stage. For example,

---

[2] While on the eve of this Opposition, Defendants proposed to file additional declarations, that is improper. *HSBC Bank USA v. Kennedy*, 2012 U.S. Dist. LEXIS 134083, *2-3 (N.D. Ill. Sept. 19, 2012) (belated authenticating declaration too late to consider).

Defendants try to (1) diminish &pizza as one of many restaurants they thought about copying; (2) argue factually that their unauthorized trespass onto &pizza's restaurant properties was permissible; (3) make excuses for why they infringed; (4) argue about the location of the infringement; (5) argue they had no reason to know not to download pictures in the asserted absence of a © symbol; and (6) argue &pizza's damages weren't as broad as claimed.  Mtn. 4-6.

Yet, even these attempts to dispute the facts are not persuasive.  These merits-based assertions cannot be tested prior to full discovery.  But even if they could be tested, the credibility, conclusory nature, and inconsistency of these declarations further demonstrate the importance of proceeding with this case.  The following four examples are the tip of the iceberg:

First, Lyle claims that he "happened to eat at an &pizza location" in D.C. in July 2015 on one of two 2015 trips to D.C.  Lyle Decl. ¶¶5-6.  Tellingly, he fails to provide any details about his second trip in 2015.  *Id.*  He claims his investigations regarding starting a new restaurant began in April 2016 from the U.K., looking into a variety of restaurants and foods without singling out &pizza or even pizza, and that he "came up" with his idea for offering pizza through @pizza in June 2016.  *Id.* and Mtn. 3-4.

This untested declaration, diminishing &pizza's central role in Lyle's scheme, directly conflicts with undeniable documentary proof.  Specifically, **on October 8, 2015** just after returning from &pizza in the U.S., Lyle and his wife registered Defendants' company as "& PIZZA LIMITED." Wagner Decl. Ex. 1 ¶3-4.  Thus, at first Defendants exactly copied Plaintiffs.

Within months, by April 2016, their plan was already matured to the point that he left his job at Barclays Ventures.  Lyle Decl. ¶ 7.  This documentary evidence shows that Lyle's D.C. trips were a detailed study of the &pizza franchise that he had ***already*** decided to copy in 2015 (when he registered his company name as "& PIZZA LIMITED").  It also infers the copycat

scheme was well-developed by April 2016, with Lyle intending to open a clone with as close a name to "&pizza" as he could.

<u>Second</u>, Lyle and Dhir gapingly omit an entire year worth of preparatory conduct from their declarations, from June 2016 until May 2017.  *See* Lyle Decl. and Dhir Decl.  Lyle attempts to claim that the "@pizza" name was only chosen in June 2017 "after some initial discussions" with Dhir.  Lyle Decl. ¶ 10; Mtn. 4 ("After hiring Mr. Dhir, the two men discussed and decided upon the name '@pizza' name [sic].").  But the U.K. corporate filings show the corporation's original "& Pizza" name was actually changed to "At Pizza" on **June 23, 2016**. Wagner Decl. Ex. 1 at ¶¶3-4.  The Defendants' Declarations carefully omit the entire first year of preparatory activity following the slight modification of their name to "At Pizza."[3]

<u>Third</u>, in Paragraph 8 of the Dhir Declaration, Dhir attempts to explain himself as a "lover of pizza" that will happen to "visit the best pizza in any city I visit."  Dhir Decl. ¶ 8.  He also explains he likes to take pictures of pizzas.  *Id.* ¶ 9.  But in the same breath he admits his trip to D.C. was "as part of my due diligence and research process in this case."  *Id.*¶ 8.  He does not attach the pictures he took as exhibits, or explain why pictures he took of &pizza's interiors would be for home-pizza making purposes.  *Id.* ¶ 9.  In fact, he utterly fails to contradict the core pleading that Defendants chose to copy &pizza, used the pictures and in-person visits as an essential step to "design[] the copycat @pizza restaurants" and carefully "build-out and open a clone restaurant with derivative architectural and interior designs."  Complaint ¶25, 42-42.

<u>Fourth</u>, Lyle argumentatively claims that any conduct (such as trespass) was not by a "competitor" because neither party currently has restaurants in the other's home jurisdiction.

---

[3] "[W]hen a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him." *International Union, United Auto v. NLRB*, 459 F.2d 1329, 1335-1336 (1972).

Lyle Decl. ¶ 13; Mtn. 16.   Yet he glosses over the fact that Defendants' "unfair copycat approach" was taken to "eliminate risk and expand quickly into a market in which they knew that &pizza was actively preparing to open restaurants." Complaint ¶ 23.   Defendants were competitors of &pizza alright, hoping to beat &pizza to the punch in stealing its next intended market.

Defendants' contested version of the operative facts will hold up poorly when tested in discovery and trial.

## III.    THE RULE 12(B)(6) CHALLENGES FAIL

### A.    Defendants Cannot Be Dismissed As Individuals Because They Are Directly Liable Whether Or Not They Are @pizza's Alter Egos

Defendants Lyle and Dhir attack the "single allegation" of alter ego liability to assert they must be dismissed absent alter ego liability.   Mtn. 14.   Defendants miss the forest for the trees. Alter ego is only one piece of their direct liability.   They are directly liable with or without alter ego liability and therefore cannot be dismissed.

The "law is well-established, that even absent grounds to pierce the corporate veil, corporate officers are personally liable for torts which they commit, participate in, or inspire, even though the acts are performed in the name of the corporation."   *Perry v. Frederick Inv. Corp.*, 509 F. Supp. 2d 11, 18 (D.D.C. 2007); *McWilliams Ballard, Inc. v. Broadway Mgmt. Co.*, 636 F. Supp. 2d 1, 9 (D.D.C. 2009).   All participants in infringement are liable.   4 McCarthy on Trademarks and Unfair Competition § 25:24 (4th ed.). (all "participants, including those acting merely as officers of a corporation" are jointly liable).

Lyle and Dhir are liable wholly apart from piercing the corporate veil.   They both secretly toured D.C. &pizza locations, studied them, owned and controlled @pizza, created @pizza, promoted @pizza, and launched it as a copycat restaurant.   *See, e.g.* Complaint ¶¶ 8-9, 17-18, 24.

As owners, officers, and managers of @pizza, Lyle and Dhir directed @pizza's actions, even if they did not personally complete them. *Id.* ¶10. These are plausible allegations of personal and direct participation in wrongdoing. Thus, "requiring a piercing of the corporate veil to hold individuals liable would be putting the cart before the horse." *Eng'g Dynamics v. Structural Software*, 26 F.3d 1335, 1349-1350 (5th Cir. 1994) (individuals held liable for infringement).

Thus, Lyle and Dhir cannot be dismissed as individual defendants.[4]

## B. The Trespass Claim Sufficiently Pleads Unauthorized Entry

The Motion to Dismiss next claims the &pizza facilities are publicly accessible and the trespass element of unauthorized entry thus cannot be stated as a matter of law. Mtn. 15. They rely on the Dhir Declaration to factually dispute the circumstances of his entry. *Id.* 15-16. This challenge fails because: (1) it is based solely on a declaration, (2) the pleadings plausibly and repeatedly allege unauthorized entry, and (3) a competitor posing as a customer does not establish consent as a matter of law.

<u>First</u>, Rule 12(b)(6) resolves pleadings challenges assuming the truth of all allegations, and any attempt to introduce the self-serving Dhir Declaration must await "a full opportunity to conduct discovery." *First Chicago International v. United Exchange Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988) (explaining requirements for converting Rule 12(b)(6) motion so as to consider evidence). The alarming excuses provided by the Dhir Declaration will be vetted in discovery. But as the Motion makes no attempt to address the pleadings, this Rule 12(b)(6) challenge fails.

---

[4] As the sufficiency of the additional alter ego legal theory (not a claim) is not ripe for consideration on this Motion, it is not further addressed in this Motion. *TAC-Critical Sys. v. Integrated Facility Sys.*, 808 F. Supp. 2d 60, 66 (D.D.C. 2011) (it is a theory not a separate claim). The Motion cites no case suggesting that the alter ego theory is to be resolved on a motion to dismiss where it is not necessary to state any of the claims for relief. *See* Mtn. 13-14 citing *Motir v. Ekwuno*, 191 F. Supp. 3d 98, 109 (D.D.C. Jun. 10, 2016) (sole contract liability was as alter ego); *McWilliams Ballard, Inc. v. Broadway Mgmt. Co.*, 636 F. Supp. 2d 1, 9 (D.D.C. 2009) (motion for leave to amend); *Regan v. Spicer HB, LLC*, 134 F. Supp. 3d 21, 40 (separate alter ego "claim" against individual for contracts and disclosures made by corporation).

Second, the Motion is incorrect in claiming "Plaintiff fails to plead that Defendants made any unauthorized entry." Mtn. 15. Paragraphs 81 to 83 of the Complaint plead exactly that. The Complaint alleges "[e]ach of Defendants, without authorization, entered numerous of @pizza's Washington, D.C. locations for the purpose of interfering with &pizza's right to control the properties and exclude others" and did so for competitive purposes. Complaint ¶¶81-83. Defendants also took their undisclosed agents onto these &pizza premises to surreptitiously provide on-the-job training in how to copy &pizza's business, marketing, and operations. *Id.* ¶84. Unauthorized entry is repeatedly alleged. *Id.* ¶¶ 81-85.

Third, Defendants did not defeat the element of unauthorized entry simply by masquerading as customers. The Motion's sole citation to *Democracy Partners*, 2018 U.S. Dist. LEXIS 1270 does not help Defendants. The *Democracy Partners* Court rejected a motion to dismiss a trespass claim against a defendant who gained access to the premises as an employee of the plaintiff. *Id.* at **18-19. The complaint alleged the employee had gained both employment and entrance to the property by misrepresentation and then went beyond the scope of any consent by recording footage while on-premises. *Id.* Both bases independently defeated defendant's argument that the unauthorized-access element failed as a matter of law. *Id.* Notably, the Court rejected out-of-jurisdiction cases suggesting that consent, even obtained by misrepresentation, might not make the access unauthorized. *Id.*

No consent was given here. Quite to the contrary, as noted above, the Complaint repeatedly alleges entry was unauthorized and without consent. Complaint ¶¶81-83.

Even if consent had been expressly pled, *Democracy Partners* demonstrates that on-premise actions outside the scope of consent state a claim for trespass. Here, as in *Democracy Partners*, Defendants cannot show as a matter of law that their actions were within the scope of

access afforded customers – "taking unauthorized pictures," "stealing &pizza's intellectual property," "training," and "perfecting a scheme of unfair competition." Complaint ¶82.  The Defendants are "competitors" and were not authorized to enter any of &pizza's locations for these purposes."  *Id.* ¶¶ 74, 83.  Thus, as in *Democracy Partners*, Defendants' access "exceeded the scope of any consent" (if any) as pled.  *Democracy Partners*, 2018 U.S. Dist. LEXIS 1270, **19 (allegation of exceeded scope of consent "is also sufficient to state a claim for trespass").

The sufficiency of the pleading is confirmed by a case heavily relied upon by *Democracy Partners – Counsel on American-Islamic Rels. Action Network v. Gaubatz*, 793 F. Supp. 2d 311, 345 (D.D.C. 2011).  The defendant there moved to dismiss a trespass claim based on consent. *Id.*  The Court rejected the argument, explaining that "it is no defense to trespass where a competitor gains entry to a business firm's premises ***posing as a customer*** but in fact hoping to steal the firm's trade secrets." *Id.* (emphasis added).  Thus, because this sort of conduct "is precisely what Plaintiffs [] alleged," the Court explained the "consent argument is premature" and "whether [the] argument will win out is a question that must await discovery." *Id.* (denying motion to dismiss trespass claim).  Applying this same rationale here, the Defendants posed as customers to engage in tortious and wrongful competitive conduct and thus their consent argument fails on the pleadings (and will almost certainly fail at trial).  Complaint ¶¶ 81-81.

Defendants' pleadings challenge to the unauthorized entry element of trespass fails.

### C.    Defendants' Conduct Plausibly States a Claim for U.S. Copyright Infringement

Defendants make three Rule 12(b)(6) challenges to the U.S. copyright claim: (1) a copyright owner has no ability to protect its copyrights from infringement until its copyright applications mature to registrations; (2) &pizza's copyright claim fails because its interior designs are not copyrightable as a matter of law; and (3) a premature declaration states that some

of the downloading from U.S. servers took place from a U.K. computer.  Mtn. at 16-19.

        **1.**      **&pizza's Copyright Infringement Claim Does Not Require Waiting Until Its Applications Register**

Plaintiff &pizza applied for registration of its copyrights before filing its copyright infringement claim.  Complaint ¶ 35.  Defendants note a split of authority on whether a plaintiff must merely apply for or successfully register a copyright prior to bringing a copyright claim.  Defendants engage in no more than a numbers tally and claim "the majority of courts in the District of Columbia" find a registration certificate rather than copyright application is required to initiate a copyright claim.  Mtn. 17.  This Court should reject Defendants' attempt to eschew the majority application approach in favor of the disfavored and draconian registration approach.

The vast majority of authority to have considered this issue has adopted the application approach, including circuit-level authority, the leading copyright treatise, and the judges in this District that have considered the issue.  As Judge Friedman explained in rejecting the registration approach and adopting the application approach:

> This Court joins Judge Kennedy [of the D.D.C.], the leading copyright treatise, and those courts that have held that an infringement suit may be brought when a copyright application is completed and submitted to the United States Copyright Office. The more common practice is for courts to allow suit to go forward as soon as the application has been completed and submitted to the Copyright Office, along with the deposit of the work in question and the fee. See 2 NIMMER ON COPYRIGHT § 7.16[B][1][a][i] (1999).

*Prunte v. Universal Music Group*, 484 F. Supp. 2d 32, 39-40 (D.D.C. 2007).  The majority of federal circuit courts have adopted the application approach.  *See Cosmetic Ideas, Inc. v. IAC/InteractiveCorp.*, 606 F.3d 612, 615-616 (9th Cir. 2010) (9th, 5th and 7th Circuit follow application approach, while 10th and 11th Circuit may follow registration approach).

While the D.C. Circuit has not expressly addressed the issue, its affirmance of an injunction covering all of a plaintiff's works without any condition of registration suggests that it

would adopt the application approach. *Walt Disney Co. v. Powell*, 897 F.2d 565, 568 (D.C. Cir. 1990). As with the national circuit-level majority, two of the three district judges in this District to consider the split have adopted the application approach. As noted, Judge Kennedy and Judge Friedman considered the split and adopted the application approach. Judge Walton considered the split and adopted the registration approach in *Strategy Source v. Lee*, 233 F. Spp. 2d 1 (D.D.C. 2002) and applied this holding without discussion in *Newborn v. Yahoo, Inc.*, 391 F. Supp. 2d 181, 188 (D.D.C. 2005) to a plaintiff who was not even identified as having applied for a registration.[5]

The application approach is the majority approach because it represents the better view for no less than four reasons:

First, Section 411(a) of the Copyright Act permits a refused applicant to maintain an infringement claim so long as "notice thereof, with a copy of the complaint, is served on the Register of Copyrights." *Prunte*, 484 F. Supp. 2d at 40 *quoting* 17 U.S.C. § 411(a). This indicates that any applicant may bring suit, subject only to an additional requirement if and when registration is refused. *Id.*

Second, the Copyright Act repeatedly uses "registration" to mean "submission or receipt of a completed application, as opposed to actual registration." *Id.* (analyzing 17 U.S.C. §§ 408(a) and 410(d)).

---

[5] The Motion also cites two later decisions mentioning *Newborn's* registration element for a copyright claim, but these decisions never noted a split or chose a side and had no reason to do so. *Potter v. Toei Animation*, 839 F. Supp. 2d 49, 53 (D.D.C. Mar. 13, 2012) (citing *Newborn* generally for elements of copyright claim and finding *pro se* plaintiff's copyright claim failed because it was against the wrong defendant); *ICC Evaluation Serv v. Int'l Ass'n of Plubming & Mech. Officials*, 2016 U.S. Dist. LEXIS 153518 **7-8 (D.D.C. Sept. 19, 2016) (rejecting defendant's argument that even though registrations were pled, something *more* was required).

Third, more recent Supreme Court precedent undermines the registration approach and supports the application approach adopted by "a majority of the courts to face the question" because it finds that any such requirement "does not impact the court's subject matter jurisdiction." *Concordia Partners, LLC v. Marcelle Pick & Pick Enters.*, 2013 U.S. Dist. LEXIS 179711, *4 (D. Maine Dec. 23, 2013) (citing *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010)).

Fourth, the policies of the Copyright Act in encouraging copyright registration, avoidance of a "needless formality" with "inefficient and peculiar result[s]," and averting unnecessary statute of limitations crises further compel adherence to the application approach. *Cosmetic Ideas, Inc. v. IAC/InteractiveCorp*, 606 F.3d 612, 620-621 (finding application approach appropriate post-*Reed*).

Plaintiff &pizza's copyright applications are sufficient and it need not wait until issuance of registrations to plead its copyright infringement claims.

### 2. Defendants' Textual Argument as to the Copyrightability of Interior Designs Fails

Next, in a short paragraph, Defendants make a single undeveloped statutory argument that 17 U.S.C. §101 "does not protect interior design" as an "architectural work." Mtn. 17-18. Defendants provide no case support for this assertion.

Section 101 provides that "architectural works" include "the design of the building." This protection extends to "interior architecture." H.R. Rep. No. 101-735 at 18, reprinted in 1990 U.S.C.C.A.N. 6935, 6949. These works include "the overall form as well as the arrangement and composition of spaces and elements in the design," but do not include "individual standard features." 17 U.S.C. §101. Defendants make no argument as to why interior designs in general, or &pizza's interior designs more specifically, amount to nothing

more than "individual standard features." Mtn. 17-18.

If Defendants intended to articulate an argument, the argument is waived because it was raised only "obliquely" and they failed to uphold their duty to "spell out their arguments squarely and distinctly." *Gold Reserve, Inc. v. Bolivarian Republic of Venez.*, 146 F. Supp. 3d 112, 126 (D.D.C. 2015) (this principle includes a brief footnote). This rule is rooted in fairness. *Id.* Also, "it is not the obligation of [the] court to research and construct legal arguments open to parties, especially when they are represented by counsel." *Nat'l Fair Hous. Alliance v. Travelers Indem. Co.*, 261 F. Supp. 3d 20, 37 n.4 (D.D.C. 2017) (statutory bar to claim waived by perfunctory development).

Taking a deeper look at this copyright challenge shows why Defendants treated it so cursorily. The "individual standard features" exclusion includes "common windows, doors and other staple building components," but does not include (1) "[n]on-standard individual features reflecting some amount of originality," nor (2) "the combination of such standard features." *T-Peg, Inc. v. Vt. Timber Works, Inc.*, 459 F.3d 97, 110 (1st Cir. 2006). The functional or utilitarian nature of the features is irrelevant. *Id.* Thus, factual issues concerning the combination of elements are for the jury. *Id.* (reversing dismissal at summary judgment stage).

The Complaint alleges far more than individual standard features. It shows pictures of an interior with combined design elements far more complex and specific than common windows, doors and other staple building components – including oversize monochromatic pictures of people in striking poses, block geometric patterns and well-defined complimentary art, a careful arrangement of restaurant layout, a balance of monochromatic elements carried throughout the restaurant, among other elements. Complaint ¶ 27. &pizza's designs are award-winning, including the 2016 "Outside the Box Design Award." *Id.* ¶ 23.

The Complaint culminates by alleging that the "elements comprising these works are original," including their "layout, and look and feel." Complaint ¶¶ 35 & 41. The plausible allegations defeat Defendants' cursory Section 101 challenge.

### 3.     Defendants' Extraterritoriality Challenge Fails

Defendants lastly raise the extraterritoriality rules of copyright infringement, claiming that no act of copyright infringement occurred in the U.S. Mtn. 18-19. But this ignores the pleadings and relies on the Dhir Declaration as to his location of infringement, an impermissible attempt to try the facts at the pleadings stage prior to discovery. Mtn. 19 citing Dhir Decl. ¶ 6.

The Supreme Court's "bright line rule mandates that the requirement that the allegedly infringing act occur in the United States be treated as non-jurisdictional," a rule that dictates an extraterritorial challenge to a copyright claim is "**_not_** a question of subject matter jurisdiction." *Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353, 1363, 1366-1368 (Fed. Cir. 2008) (emphasis added) (applying *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006)).

Thus, until discovery is completed, Defendants are limited to a pleadings challenge and may not attempt to dispute extraterritoriality by introducing evidence in this pre-answer motion to dismiss. *First Chicago International v. United Exchange Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988).[6] The Motion fails to cite the Complaint for its arguments and relies solely, and impermissibly, on the Dhir Declaration. Mtn. 18-19. As no pleadings-based challenge has been mounted, instead admitting to all the D.C. visits as a part of their scheme, the Motion waives any further unarticulated argument and cannot be granted on this basis.

---

[6] Even if extraterritoriality were a matter of subject matter jurisdiction, it would be intertwined with the merits of a copyright claim. Intertwined factual disputes may not be resolved at this early stage, because it would "short-circuit the factual development and adjudicative process to which a plaintiff is generally entitled." *Hale v. United States*, 2015 U.S. Dist. LEXIS 161237, *10 (D.D.C. Dec. 2, 2015).

Even were extraterritoriality considered, the challenge falls flat.  The narrow reach of an extraterritoriality challenge to copyright infringement is well-established:  It applies only where infringement was "entirely abroad" and "all the copying or infringement occurred outside the United States."  *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 307-308 (4th Cir. 2012) (adopting predicate-act approach employed by other circuits); *c.f. Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102, 123, 2011 U.S. Dist. LEXIS 78781, *52 (D.D.C. Jul. 20, 2011) ("there is no cause of action under the Copyright Act for acts of infringement that occur completely outside the United States").

The Complaint plausibly pleads predicate U.S. infringement that did not occur entirely abroad.  It alleges the Defendants needed a closer look at &pizza and accomplished their goals in the one or more trips each took to Washington, D.C.  Complaint ¶ 25.  Defendants' had access to &pizza's copyrighted works in the United States. *Id.* ¶ 37.  Defendants also entered into &pizza's Washington, D.C. locations masquerading as customers and took extensive pictures.  *Id.* ¶ 25. They copied pictures taken from U.S. servers.  *Id.* ¶ 43.  This downloading and the server

locations were alleged "in the United States." *Id.* ¶ 39.[7]  Key components of Defendants' scheme occurred in the U.S.  Thus, &pizza plausibly pled U.S. copyright infringement despite Defendants' extraterritoriality challenge.

### D.    Defendants' Extraterritoriality Challenge to &pizza's Lanham Act Claims Fails Because Defendants' Conduct Has a Sufficient Effect on U.S. Commerce

The Lanham Act reaches extraterritorial conduct that has at least "some effect on United States foreign commerce" subject to the traditional considerations of extraterritoriality.  *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 428 (9th Cir. 1977) (stating test for foreign defendants).  Defendants again advance the wrong standard of review and the Complaint more than plausibly meets the Lanham Act's minimum thresholds of extraterritoriality.

Defendants erroneously suggest this issue may be tested under either Rule 12(b)(1) and Rule 12(b)(6).  As with the Copyright Act, following *Arbaugh v. Y & H Corp.*, 546 U.S. 500, "the extraterritorial reach of the Lanham Act is a merits question that does not implicate federal courts' subject-matter jurisdiction."  *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 968 (9th Cir. 2016).  The question is solely one of plausible pleadings performed under Rule 12(b)(6).  *Id.*

---

[7] Even were server location the only U.S. touchpoint (it is not), for purposes of liability, a download is a reproduction of a file at the location of the server.  *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 2017 U.S. Dist. LEXIS 130070, *78-79 (N.D. Cal. Aug. 15, 2017) (copyright claim overcame extraterritoriality challenge at pleadings stage where it was "replete" with allegations that the defendants accessed "software stored on servers in the United States" to download); *Liberty v. Unigay*, 2011 U.S. Dist. LEXIS 153615, **14-16 (D. Az. Dec. 21, 2001) (extraterritoriality defense "inapplicable" where foreign defendants "unlawfully download[ed] from Plaintiff's web server in Tampa, Florida.").  In fact, Defendants' own caselaw shows the server's U.S. location is more than enough to overcome an extraterritoriality challenge at the pleadings stage.  Mtn. 19 citing *Elsevier Ltd. v. Chitika, Inc.*, 826 F. Supp. 2d 398, 403 (D. Mass. 2011) (even where no act in U.S. was alleged, pleadings challenge based on extraterritoriality failed because "factual issues involving the structure of the Internet and the locus of the infringing activity remain (Where did the copying take place? Where are the third-party websites and servers, from which unauthorized copies of plaintiffs' books were downloaded?)").  Defendants' other cases do not deal with a defendants' direct infringement liability under U.S. copyright law for a download's violation of the reproduction right.  Mtn. 19.

22

The Complaint pleads in detail the traditional considerations strongly supporting extraterritorial application of the Lanham Act: (1) Defendants' U.S. activity was central and critical to their successful opening of the infringing restaurant in the U.K.; (2) one of the largest effects of their conduct was in the U.S. to a U.S. company; (3) the copying carried an explicit purpose to harm or effect a U.S. business in U.S. commerce; and (4) the harm's negative effect was foreseeable and forewarned to Defendants months before they opened.  Complaint ¶¶ 66, 72, 74; *Wells Fargo & Co.*, 556 F.2d at 428.  All of this shows the required "some effect" on U.S. foreign commerce.  *Id.*

It is virtually a foregone conclusion that extraterritorial jurisdiction is present where such intentional violations of the Lanham Act are alleged to result in losses to a U.S. corporation resulting in a foreseeable effect on U.S. commerce.  *See, e.g. MGM Resorts Int'l v. Unknown Registrant of www.imgmcasino.com*, 2015 U.S. Dist. LEXIS 128397, *9-14 (D. Nev. Jul. 8, 2015) (explaining how each factor militated toward extraterritorial application of Lanham Act when Panama defendant intentionally opened an "MGM" casino).

Defendants respond by claiming their conduct nevertheless does not rise to the level of a "substantial effect" on U.S. domestic or foreign commerce because they currently have just one restaurant.  Mtn. 21.[8]  Their only legal citation is to a case involving one advertisement abroad without *any* plausible effect on U.S. commerce.  *Guantanamera*, 672 F. Sup. 2d at 112-113. Notably, only "some effect" is required, not a "substantial effect."  *Wells Fargo & Co.*, 556 F.2d

---

[8] Defendants also suggest without citation that their opposed U.K. trademark application creates a potential conflict between U.K. and U.S. law.  However, it is well-established that only an existing, registered mark disfavors extraterritorial jurisdiction of the Lanham Act.  *Steele v. Bulova Watch Co.*, 344 U.S. 280, 289 (1952) (noting no Mexican registration and "thus no conflict which might afford petitioner a pretext that such relief would impugn foreign law"); *Warnaco Inc. v. VF Corp.*, 844 F. Supp. 940, 952, 1994 U.S. Dist. LEXIS 1259, *36 (S.D.N.Y. 1994) (no conflict with foreign countries in absence of registration by defendant).  Defendants have no such U.K. trademark ***registration***.

at 428. But regardless of which level of effect is required, &pizza has alleged far more than *Gauntanamera's* single foreign advertisement.

Here, in contrast to the transient advertisement in *Guantanamera*, Defendants have established a permanent restaurant in Edinburgh that meticulously copied the trademark and brand elements of &pizza for the explicit purpose of harming or affecting a U.S. business and U.S. commerce. Complaint ¶ 66(a). The restaurant enjoys the traffic of U.S. tourists that spend over 25 million Euros dining in Edinburgh each year, as well as a substantial number of university students from the U.S. – both of which are familiar with &pizza and confused about the affiliation between &pizza and @pizza. *Id.* ¶¶ 65, 75. This infringement and copycat restaurant is causing substantial harm to &pizza's U.S.-based restaurant chain and trades off the goodwill of &pizza. *Id.* ¶ 64.

This unfair copycat approach was taken to eliminate risk and expand quickly into a market in which they knew that &pizza was actively preparing to open restaurants. Complaint ¶ 23. As @pizza adopted a similar mark and brand elements in order to maximize the chance of confusion, public confusion is presumed. *Id.* ¶¶ 53-54; *La Quinta Worldwide v. Q.R.T.M.*, 762 F.3d 867, 877 (9th Cir. 2014).

Thus, Defendants' conduct is interfering with &pizza's foreign expansion, confusing U.S. consumers, and intentionally harming a U.S. business and its goodwill, each of which individual is sufficient and in combination overwhelmingly demonstrates extraterritorial jurisdiction of the Lanham Act.

The case law recognizes just such type of harm as more than sufficient for extraterritorial application of the Lanham Act. In *Warnaco Inc. v. VF Corp.*, 844 F. Supp. 940, 951 (S.D.N.Y. 1994), the Court held "a substantial effect on commerce may arise from harm to a [U.S.]

24

plaintiff's reputation." *Id.* Diminishing foreign sales or opportunities for foreign licensed sales is also sufficient. *Id.* (denying motion to dismiss; foreign conduct affected reputation and foreign licensing). Relatedly, "confusion among American consumers" leaves "little doubt about a substantial effect on U.S. commerce." *Kroma Makeup EU, Ltd. v. Boldface Licensing*, 2015 U.S. Dist. LEXIS 49534, *25-26 (M.D. Fla. Apr. 15, 2015).

The Complaint plausibly pleads the traditional considerations of extraterritoriality and effect on U.S. commerce, providing for extraterritorial application of the Lanham Act. U.S. law is up to the task of protecting against Defendants' transcontinental infringement scheme.

## IV.    THE RULE 12(B)(1) CHALLENGE TO THE UK PASSING OFF CLAIM FAILS BECAUSE OF UNDISPUTED DIVERSITY JURISDICTION

Defendants challenge the U.K. passing off claim based on supplemental subject matter jurisdiction, citing to *Voda v. Codis Corp.*, 476 F.3d 887, 898 (Fed. Cir. 2007). Mtn. 19-20. Such argument is misplaced here – as multiple courts have acknowledged, *Voda* is inapplicable to cases in which diversity jurisdiction exists (making jurisdiction mandatory). *Baker-Bauman v. Walker*, 2007 U.S. Dist. LEXIS 23080 *6 (S.D. Oh. Mar. 28, 2007) (foreign patent infringement), *Blockbuster, LLC v. Grupo Mizbe*, 2015 U.S. Dist. LEXIS 187253 *6 (S.D. Fl. Jul. 24, 2015) (foreign trademark infringement); *cf. Hales v. Winn-Dixie Stores, Inc.*, 500 F.2d 836, 848 n.1 (4th Cir. 1974) (diversity provides additional jurisdictional basis over state, federal and foreign claims). It is undisputed that the parties here are completely diverse and the amount in controversy is over $75,000. Complaint ¶3; 28 U.S.C. § 1332(a).

## V.    THE RULE 12(B)(1) CHALLENGE TO PERSONAL JURISDICTION FAILS

Defendants also raise a challenge to personal jurisdiction. The challenge fails first because it inadequately develops the basis for the challenge and thereby waives it; and second, under the correct legal framework, Plaintiffs have readily shown a *prima facie* basis for

jurisdiction.

### A.    Defendants' Cursory Argument for Personal Jurisdiction Waives the Challenge

The Motion's personal jurisdiction section contains only 18 lines of argument.  Mtn. 12-13.  Moreover, this modicum of argument fails to spell out the grounds for Defendants' specific jurisdiction challenge. The Court should therefore treat Defendants' personal jurisdiction arguments as waived, as Defendants do not "spell out their arguments squarely and distinctly" so as to allow the Court and &pizza to address them straight on.  *Gold Reserve, Inc. v. Bolivarian Republic of Venez.*, 146 F. Supp. 3d at 126.  Defendant's failure to properly present the personal jurisdiction issue demonstrates the challenge should be denied on this Motion as waived.

First, the sole legal support for Defendant's substantive argument is a case addressing the peculiar issue of whether a U.S. court should hear claims alleging that a defendant's free speech rights were violated by a Singapore arbitrator's injunction.  *Id.* citing *Sharp Corp. v. Hisense USA Corp.*, 2017 U.S. Dist. LEXIS 186686, \**1 & 21 (D.C.C. Nov. 13, 2017).  But all of the Defendants here personally appeared in this forum to engage the alleged conduct.

Second, while Defendants offer two jurisdictional declarations, they attempt to analyze those declarations under a single narrow portion of D.C.'s long-arm statute, D.C. Code § 13-423(a)(4), asserting in a footnote on Page 12 of the Motion that "no other subsection of D.C. Code § 13-423 applies."  But that is incorrect.  The well-established D.C. Circuit rule of law is that D.C. Code § 13-423(a)(1) provides jurisdiction coextensive with and subsumed by the U.S. Constitution, a rule of law cited in two cases included on Page 8 of Defendants' legal standards section but never once mentioned or applied in the Motion.  *See Overseas Partners v. Progen Musavirlik*, 15 F. Supp. 2d 47, 51 (D.D.C. 1998) (calling this rule "well-established"); *U.S. v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 128 (D.D.C. 2000).  Defendants nevertheless freely

chose to perform no analysis under the U.S. Constitution.  Similarly, even though the Motion quotes the Complaint Paragraph 4's language invoking the Supreme Court's *Calder* effects-test (e.g. defendants "committed intentional torts causing foreseeable damage in this jurisdiction"), Defendants never address this effects test.  These failures amount to a waiver.

*Kimberly-Clark Worldwide, Inc. v. Pameccanica Data SpA*, 2011 U.S. Dist. LEXIS 72184 *5 (E.D. Wis. Jul. 1, 2011) is instructive.  In moving to dismiss for lack of jurisdiction, the relevant two-prong test there required analysis of both the state long-arm statute and due process under the U.S. Constitution.  *Id.*  The Court found that the Defendant's failure to address the first prong waived any jurisdictional challenge based on the long-arm statute.  *Id.*  Similarly, Defendants' failure to analyze jurisdiction under either F.R.C.P. 4(k)(2), D.C. Code § 13-423(a)(1), the U.S. Constitution or the effects test demonstrates a clear waiver by perfunctory development of the personal jurisdiction challenge.

**B.     &pizza Makes a *Prima Facie* Showing of Personal Jurisdiction**

Even were the Court to inquire further into personal jurisdiction, Plaintiff has established a *prima facie* case of jurisdiction over the Defendants because.  Properly weighing the allegations and affidavits and analyzing jurisdiction under the appropriate standards, all of the claims arise from forum-related activity that made it foreseeable that Defendants would be haled into the U.S. and D.C. forums to answer for their actions.

**1.     The Weight Accorded the Allegations and Declarations**

In resolving challenges to personal jurisdiction under Rule 12(b)(1), it is well-settled that (1) "the plaintiff need only make a *prima facie* showing that the court has personal jurisdiction," (2) "the uncontroverted allegations of the complaint must be taken as true, and the court will draw all reasonable inferences in plaintiff's favor," and (3) "any 'factual discrepancies appearing in the record must be resolved in favor of the plaintiff.'"  *Bazarian Int'l Fin. Assocs., LLC v.*

*Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 8 (D.D.C. 2016) (finding jurisdiction) *quoting Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).

While declarations may in appropriate circumstances be considered, it is inappropriate to either use Rule 12(b)(2) or convert to summary judgment under Rule 12(d) where the factual dispute involves facts overlapping both the merits and jurisdiction. *McBeath v. Inter-American Citizens for Decency Committee*, 374 F.2d 359, 362-363 (5th Cir. 1967).

Where "the merits of the complaint overlap with jurisdictional facts," it is necessary to "assume the claims are meritorious…for example, where a determination of personal jurisdiction in a tort case requires a finding that the defendant caused tortious injury." *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 80 (D.D.C. 2006). Similarly, where issues of purposefulness, intent, knowledge, and motive go to jurisdiction and the merits, the merits and jurisdiction of an infringement claim overlap, and a Rule 12(b)(2) challenge should be denied and deferred to a trial on the merits. *Amini Innovation Corp. v. JS Imps., Inc.*, 497 F. Supp. 2d 1093, 1106 n.34 (C.D. Cal. 2007).

In sum, the uncontroverted allegations of the Complaint are treated as true, the controverted liability-imposing allegations of the Complaint are treated as true, and factual discrepancies in the record are resolved in &pizza's favor. Applying these rules shows jurisdiction here is *prima facie* proper, as shown below.

### 2.    The Analytical Framework for Testing Jurisdiction

While Defendants conveniently focus on D.C. Code Ann. § 13-423(a)(4), in fact Subsection (a)(1)'s test for specific jurisdiction is broadly coextensive with the U.S. Constitutional inquiry and "the statutory and constitutional jurisdictional questions, which are usually distinct, merge into a single inquiry[.]" *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1994); *Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013); *First Chicago*

*International v. United Exchange Co.*, 836 F.2d 1375, 1377 (1988); *North v. Smarsh, Inc.*, 160 F. Supp. 3d 63, 81 (D.D.C. 2015).

In any event, other than the trespass claim, all but one of the remaining claims are federal Copyright and Lanham Act claims. Thus, under F.R.C.P. 4(k)(2), the U.S. Constitution provides a separate independent basis for personal jurisdiction in this federal court based on ***national contacts*** even if Defendants were able to show the D.C. test was materially narrower. *Mwani v. bin Laden*, 417 F.3d 1, 8 (D.C. Cir. 2005); *Mwani v. Osama Bin Laden*, 417 F.3d 1, 12 (D.C. Cir. 2005) (contacts with "nation as a whole"); *Citadel Inv. Group, L.L.C. v. Citadel Capital Co.*, 699 F. Supp. 2d 303, 314 (D.D.C. 2010). And there is no disputing Defendants extensive contacts with the United States.

### 3.    Defendants' Intentional Acts and Transacting of Business Were Expressly Aimed At This Forum, Causing Foreseeable Effects Here

Applying these rules, &pizza *prima facie* shows that its home forum has personal jurisdiction over the Defendants for each of the overlapping claims in the Complaint because: (1) trespass is a local property action that can only be brought in the D.C. forum, (2) the *Calder* effects test establishes personal jurisdiction for Copyright and Lanham Act Claims over the Defendants, who transacted business in this forum and meticulously directed their conduct at this forum, and (3) the U.K. passing off claim rises and falls with the trespass and federal claims.

First, the Defendants do not dispute this Court's specific jurisdiction over the trespass claim. That is because the local nature and jurisdiction of such claims is well-settled: "[A]n action for trespass upon the land, involving necessarily and chiefly the question of its title, is local and could ***only*** be brought in the jurisdiction wherein the land is situated." *Columbia Nat'l Sand Dredging Co. v. Morton*, 28 App. D.C. 288, 295 (D.C. Cir. 1906) (emphasis added) (applying *Ellenwood v. Marietta Chair Co.,* 158 U.S. 105, 107 (1895)). The trespass claim is

based on Defendants' multiple trespasses onto &pizza's D.C. restaurants and the trespass of their agents – including managers of @pizza that the Defendants sent to the restaurants for training. Complaint ¶¶79-87.  It can only be brought here.

Moreover, any dispute Defendants might have as to substantive trespass liability is inextricably intertwined with the merits of the trespass claim and not appropriate for this Motion. *McBeath*, 374 F.2d at 362-363.  The pleadings show a properly pled trespass claim. *See* pp. 13-15 above.  Nor do Defendants deny having been on the property here in D.C.  Instead, they argue the facts of why they were there and for what purpose – that is inappropriate at this juncture.

<u>Second</u>, the federal Copyright Act and Lanham Act claims (Claims 1, 3 and 4) satisfy the U.S. Constitution's specific jurisdiction standards under the well-settled rule that "specific jurisdiction exists where a plaintiff files suit in its home state against an out-of-state defendant and alleges that defendant intentionally infringed its intellectual property rights knowing [the plaintiff] was located in the forum state." *Adobe Sys. v. Blue Source Grp. Inc.*, 125 F. Supp. 3d 945, 961 (N.D. Cal. 2015); *Rhino Metals, Inc. v. Kodiak Safe Co., LLC*, 2017 U.S. Dist. LEXIS 91744, *19 (D. Id. Mar. 25, 2017); *Fighter's Mkt., Inc. v. Champion Courage LLC*, 207 F. Supp. 3d 1145, 1153 (S.D. Cal. 2016) (this jurisdictional basis is "particularly salient with respect to claims of infringement of intellectual property rights;" sale into Brazilian market knowing of Plaintiff and its trademarks satisfied jurisdictional inquiry).

This effects test stems from *Calder v. Jones*, 465 U.S. 783 (1984), which found jurisdiction over individuals with no conduct in California was "proper in California based on the 'effects' of their [non-forum] conduct in California." *Id.* at 788.  The same effects test is applied in D.C. under the U.S. Constitution as in these Ninth Circuit cases. *Triple Up v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 24 (D.D.C. 2017) (In applying Rule 4(k)(2), Ninth Circuit caselaw on

the effects test for infringement is good law in D.C.); *Kline v. Williams*, 2006 U.S. Dist. LEXIS 23263, *17-18 (D.D.C. Mar. 23, 2006) (same; stating D.C. Circuit effects test).[9]

*Fighter's Mkt., Inc. v. Champion Courage LLC*, 207 F. Supp. 3d 1145, 1153 (S.D. Cal. 2016) illustrates the rule's application.  In *Fighter's Mkt., Inc.*, the Brazilian defendant was unable to consummate a joint venture with the plaintiff trademark owner and began selling the branded merchandise in Brazil instead.  *Fighter's Mkt., Inc. v. Champion Courage LLC*, 207 F. Supp. 3d 1145, 1153 (S.D. Cal. 2016).  The defendant argued that its conduct was aimed at Brazil and did not foreseeably subject it to jurisdiction in the plaintiff's U.S. forum.  *Id.*  The Court rejected such contention, explaining: "[T]he direction of Defendant's intentional acts, which Defendant contends were aimed at Brazil, does not need to coincide with the direction of the known impact of Defendant's acts."  *Id.*  The Lanham Act reaches activity even if it is perfected abroad, and it was immaterial whether any product was sold into the plaintiff's home forum.  *Id.* at 1165; *see also Steele v. Bulova Watch Co.*, 344 U.S. 280, 289, 73 S. Ct. 252, 257 (1952) (holding that the Lanham Act applies to infringing activity consummated or perfected abroad).  Because the complaint there alleged intentionally infringing foreign sales that the Defendants knew would have an impact on Plaintiff, the infringing conduct was aimed at Plaintiff's forum, foreseeably caused harm to Plaintiff in its home forum, and the infringement claim arose out of this activity.  *Id.* at 1152-1156.

The rule readily fits here as well.  Plaintiff &pizza is headquartered in D.C. and has many of its restaurants in D.C. (and elsewhere in the U.S.).  Complaint ¶¶6, 11, 65.  Defendants

---

[9] D.C. courts have also repeatedly found that the test is also "persuasive" and "likely offers the better method" for trademark and copyright infringement claims under the "causing tortious injury" test for jurisdiction under D.C. Code Ann. § 13-423(a)(3) or (a)(4).  *Nu Image, Inc. v. Doe*, 799 F. Supp. 2d 34, 39 (D.D.C. 2011); *Citadel Inv. Group, L.L.C. v. Citadel Capital Co.*, 699 F. Supp. 2d 303, 314 (D.D.C. 2010) (trademark infringement and unfair competition).

specifically traveled to this forum multiple times and visited those restaurants, transacting business in disguise as customers, studying and taking pictures of the restaurants to copy them. *Id.* ¶¶17, 24-25. Dhir even admits that he transacted business in D.C. by posing as a customer of &pizza in the forum for the purpose of gaining access to &pizza's restaurants to take pictures and engage in reconnaissance for Defendant @pizza. Dhir Decl. ¶9.

After Defendant Lyle's reconnaissance trip to &pizza locations in 2015 in the D.C. forum, investigating &pizza, Lyle immediately incorporated a restaurant under the exact same name – "&pizza." Lyle Decl. ¶¶5-6; Wagner Decl. Ex. 1 at ¶¶3-4**.** The name changed to @pizza months later, a trivial change that only serves to evidence "the intent to continue to take advantage of [&pizza's] goodwill." Wagner Decl. Ex. 1 at ¶¶3-4; *Card Tech Int'l, LLLP v. Provenzano*, 2012 U.S. Dist. LEXIS 81481 *76, (C.D. Cal. Jun. 7, 2012) (where plaintiff's mark was DIAMOND, and defendant changes its mark from DIAMOND TECHNOLOGY to DIAMOND TECHNOLOGIES and then DIAMOND ICE TECH, this "series of minor, incremental changes to the similar marks evidence the intent to deceive, and the intent to continue to take advantage of [plaintiff's] goodwill [in DIAMOND].").

The Defendants then sent their employees to &pizza as their agents to transact yet more business in this forum, to engage in more copying of &pizza's D.C. restaurants. Complaint ¶¶82, 84. This scheme to open a copycat restaurant of a D.C. restaurant chain was intended to and did cause harm to &pizza in D.C. *Id.* ¶¶64-66. And looking to national contacts under Rule 4(k)(2), the downloads of infringing images from U.S. servers only further confirms this U.S. federal court's jurisdiction. *See* p. 28 above.

As noted above, this copycat course of conduct was intended to and did have a substantial effect on &pizza and its goodwill. *See* pp. 22-24 above. This harm under the effects test is felt

by &pizza in D.C. and harms U.S. commerce. *Id.*; *Adobe Sys.*, 125 F. Supp. 3d at 961. Thus, the U.S. Constitution respects &pizza's selection of their home forum for these claims.

Third, the U.K. passing off claim is simply an extension of the D.C. trespass and U.S. intellectual property claims. As one of the "claims that arose out of the same core of operative fact" as the other claims, this Court's jurisdiction extends to it as well. *Oetiker v. Jurid Werke*, 556 F.2d 1, 4-5 (D.C. Cir. 1977). This claim is closely related to the other claims and judicial efficiency would be undermined by declining to hear such a highly-related claim.

In fact, *Oetiker* provides that all claims arising from the same set of facts should be resolved in a court with personal jurisdiction over any of the claims. *Oetiker*, 556 F.2d at 4-5. As the Defendants' trespass was an essential step in their copycat scheme, jurisdiction over the remaining claims exists by virtue of the **undisputable jurisdiction over the trespass claim**. All claims arise from Defendants' trespasses. *See* Complaint ¶¶ 38, 43, 52, 65(b), 66(b)&(g), 74. Thus the trespass claim by itself justifies the exercise of personal jurisdiction over all the claims.

&pizza shows a *prima facie* basis for jurisdiction over each claim in the Complaint.

### 4.    Jurisdiction is Not Unreasonable

With a *prima facie* case of jurisdictional minimum contacts established, the burden shifts to Defendants to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-477 (1985). None of Defendants' arguments suggest any of the traditional factors demonstrating unreasonableness. *Rhino Metals, Inc. v. Kodiak Safe Co.*, LLC, 2017 U.S. Dist. LEXIS 91744, at **25-30 (setting forth the factors). Looking at the factors:

First, the Defendant's purposeful direction at this forum also constitutes purposeful interjection favoring the Plaintiff's forum. U.K. counsel's involvement and reliance on U.K. law do nothing to alter the fact of Defendants' purposeful interjection. Nor is a victim required to

chase its rights to the tortfeasor's home forum.  Mtn. 2 & 7.

Second, Defendants fail to argue or suggest that the burden of defending in D.C. (where they came often to set up their scheme) would somehow deprive them of their day in court.

Third, Defendants have failed to show any actual conflict of sovereignty.  That the parties have opposing trademark applications in the U.K. and E.U. is solely an issue that @pizza has forced by unilaterally filing a trademark application in the U.K.  Mtn. 7-8.  Mere unilateral trademark applications (and preregistration oppositions) do not implicate a sovereign conflict. *See* Note 8 above.  Nor have Defendants explained how a trademark decision would "likely resolve the entire dispute," particularly regarding the claims brought under D.C. trespass, U.S. copyright and U.S. unfair competition law.  Mtn. 2.

Fourth, D.C. has a strong interest in providing an effective means of redress for Plaintiff &pizza as a tortiously injured forum resident and for violations including local trespass law, claims which have no avenue for resolution in any U.K. forum.  *Gilson v. Republic of Ireland*, 682 F.2d 1022, 1028-1029 (D.C. Cir. 1982).

Fifth, that Plaintiff is based in D.C. makes its home forum more efficient and convenient for Plaintiff.  Jurisdiction is supported where it provides the Plaintiff with a "convenient and effective forum." *Gilson*, 682 F.2d at 1028-1029 (jurisdiction over Ireland defendant).

Sixth, at least the D.C. trespass claim is local in nature and cannot be brought in the U.K.

The traditional factors all favor jurisdiction and do not make out "a compelling case" for the unreasonableness of jurisdiction.  *Burger King Corp.*, 471 U.S. at 476-477.

## VI.    CONCLUSION

Defendants are operating a copycat &pizza franchise in the U.K. under the name "@pizza," trading off the goodwill and hard-earned brand identity of the D.C. plaintiff, &pizza. The Complaint states well-plead and plausible claims for trespass as well as intellectual property

violations under both U.S. and U.K. law.  Defendants are subject to this Court's jurisdiction and must defend this calculated scheme here.  The Motion should be denied.

Were the Court inclined to grant the Rule 12(b)(6) challenge in any respect, it should be with leave to amend.  There is no suggestion that the asserted defects are such that no amendment could cure.  For example, any defect as to extraterritoriality of copyright infringement could be cured by adding a claim for infringement under U.K. copyright law, a claim that could be decided in this Court under its diversity jurisdiction.  *See* Section IV, p. 24-25 above.  Thus, in the event Defendants succeed to any degree in establishing a defect, any dismissal should be without prejudice and with leave to amend.  *Queen v. Schmidt*, 2016 U.S. Dist. LEXIS 62642, **3-4 (D.D.C. May 12, 2016) *quoting* 5 Charles Alan Wright, Fed. Prac. & Proc. Civil § 1281 (3d ed. 2012) (where the court "grants a motion to [] dismiss . . . , ordinarily it will do so without prejudice and permit the filing of an amended pleading").

Were the Court inclined to grant Defendants' motion on jurisdictional grounds, before doing so, jurisdictional discovery should be permitted.  With this Circuit's "quite liberal" standard, "jurisdictional discovery is available when a party has 'at least a good faith belief' that the court has personal jurisdiction."  *Delta Sigma Theta Sorority, Inc. v. Lamith Designs, Inc.*, 275 F.R.D. 20, 29-31 (D.D.C. Jun. 21, 2011) (granting discovery and denying motion to dismiss without prejudice) *quoting Caribbean Broad. Sys. v. Cable & Wireles PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998); *Diamond Chem v. Atofina Chems.*, 268 F. Supp. 2d 1, 36 (D.C.C. 2003) ("it is hard to image a situation" where jurisdictional discovery is not appropriate; "no choice but to allow" discovery where "no indication that Plaintiffs request is not made with the 'good faith belief that such discovery will enable it to show the court has personal jurisdiction over

defendant'") (quoting *Carribian Broad. Sys.* and *GTE Media Services v. Bellsouth Corp.*, 199
F.3d 1343, 1351 (D.C. Cir. 2000)).

If needed, Plaintiff &pizza has more than the required good faith belief that jurisdictional
discovery would assist in establishing jurisdiction, as Defendants' declarations: (1) are in conflict
with documentary evidence;  (2) overlap with the substance of the claims to which &pizza
enjoys a right of jury trial after full discovery; (3) identify but fail to produce the at-issue pictures
taken while one of the Defendants was in the United States; (4) omit an entire critical year of
conduct; and (5) submit a large amount of detail pertaining to matters that &pizza does not
currently have access to.  Thus, any inclination to decline jurisdiction should be postponed in
favor of jurisdictional discovery.

Pursuant to LCvR 7(f), Plaintiff also requests oral argument.

Dated:  January 26, 2018                      MINTZ LEVIN COHN FERRIS
                                              GLOVSKY AND POPEO P.C.

                                       By:  */s/Ben L. Wagner*
                                            Andrew D. Skale (admitted *pro hac vice*)
                                            Ben L. Wagner (admitted *pro hac vice*)
                                            3580 Carmel Mountain Road, Suite 300
                                            San Diego, CA 92130
                                            (858) 314-1500
                                            adskale@mintz.com
                                            bwagner@mintz.com


                                       By:  */s/David Barmak*
                                            David Barmak
                                            DC Bar No 236752A
                                            701 Pennsylvania Avenue NW #900
                                            Washington, DC 20004
                                            (202) 585-3507
                                            DBarmak@mintz.com

                                            *Attorney for Plaintiff IMAPIZZA, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 26, 2018, the foregoing document(s) has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all CM/ECF registered users.  Further, a courtesy copy of the foregoing document(s) was sent to Defendants' counsel via e-mail as follows:

> Matthew J. Dowd, Esq.
> Dowd PLLC
> 1717 Pennsylvania Avenue, NW
> Washington, D.C. 20006
> mjdowd@dowdpllc.com

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO P.C.

By:  */s/Ben L. Wagner*
Andrew D. Skale (admitted *pro hac vice*)
Ben L. Wagner (admitted *pro hac vice*)
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
(858) 314-1500
adskale@mintz.com
bwagner@mintz.com

By:  */s/David Barmak*
David Barmak
DC Bar No 236752A
701 Pennsylvania Avenue NW #900
Washington, DC 20004
(202) 585-3507
DBarmak@mintz.com

*Attorney for Plaintiff IMAPIZZA, LLC*

75271391v.1